FREDERIC B. STUDWELL, Appellant, *v.* THE BUSH COMPANY, LIMITED, Respondent, Impleaded with Another.

**Evidence — contract — when parol contract purporting to cover alleged exceptions or omissions in a written contract cannot be proved.**

A party cannot establish a parol agreement preceding or accompanying the execution of a written contract for the purpose of covering an alleged exception or omission in the written contract when the contract covers the entire relations of the parties and shows no omission or exception, since this would result in varying and contradicting by parol the provisions of an instrument whereby the parties have fully and absolutely expressed their engagements. *(Thomas* v. *Scutt*, 127 N. Y. 133, followed.)

*Studwell* v. *Bush Company*, 143 App. Div. 907, affirmed.

(Argued October 17, 1912; decided November 19, 1912.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered February 21, 1911, unanimously affirming a judgment in favor of defendants entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George E. Morgan* and *Charles N. Morgan* for appellant. The evidence clearly showed that a certain parol contract had been made between the plaintiff and the defendant the Bush Company, Limited, made up of a number of distinct engagements on the part of each; that a part only of such parol contract had been reduced to writing and that certain independent and collateral agreements existing between the parties made by parol had never been committed to writing. Such agreements made by parol, it was competent and proper to prove by parol. (*Chapin* v. *Dobson*, 78 N. Y. 74; *Cooper* v. *Payne*, 186 N. Y. 334; *Thomas* v. *Scutt*, 127 N. Y. 133; *Doty* v. *Thompson*, 116 N. Y. 515; 2 Pars. on Cont. [7th

ed.] 684; 1 Greenl. on Ev. [7th ed.] § 284; Stephen's Digest
of Evidence [6th ed.], ch. 12, art. 90, § 2; *Rutledge* v.
*Worthington*, 119 N. Y. 592; *Briggs* v. *Hilton*, 99 N. Y.
517.)

*I. R. Oeland* for respondent. The contract of 1895
was a complete contract, stated exactly what the plain-
tiff was to do and the compensation which he was to
receive, and the trial court should not have permitted
oral testimony to vary the terms of this instrument.
(*Brantingham* v. *Huff*, 174 N. Y. 53; *Stowell* v. *Green-
wich Ins. Co.*, 163 N. Y. 298; *Jamestown Business Col-
lege* v. *Allen*, 172 N. Y. 291; *Seitz* v. *Brewers' Refriger-
ating Co.*, 141 U. S. 510; *House* v. *Walch*, 144 N. Y.
418; *Thomas* v. *Scutt*, 127 N. Y. 133; *Lee* v. *Lamprecht*,
196 N. Y. 32–37; *Sturmdorf* v. *Saunders*, 117 App. Div.
763; 190 N. Y. 555; *Smith* v. *Dotterweich*, 200 N. Y. 299.)

HISCOCK, J. As stated in the complaint this action
was brought under an alleged contract of employment
made by appellant with respondent to recover a percent-
age of the amount realized by the latter on the sale of
certain property, as compensation for certain warehousing
contracts and agreements claimed to have been assigned
by appellant to respondent and for the former's "per-
sonal good will and that portion of the value of the busi-
ness which his skill, ability and personal good will had
(have) produced at the time of said sale and for his
services in organizing and promoting said business of
warehousing."

It is claimed by appellant that various errors were com-
mitted on the trial which entitle him to a new trial. The
respondent, on the other hand, insists that the only testi-
mony which appellant introduced or offered on which he
might ask to go to the jury was inadmissible evidence of
an alleged parol contract which varied a written con-
tract between the parties covering all of the matters

involved in this litigation, and that for this reason appellant did not establish any cause of action and the errors complained of were immaterial. Inasmuch as we agree with the respondent's contention, it will only be necessary to discuss the phase of the case thus made important.

Appellant had been engaged in the cotton warehouse business, in the course of which he had built up a good will personal to himself. For reasons immaterial here he had at some time entered into negotiations with the president of respondent looking to the establishment by the latter of a similar business and the employment of himself as manager thereof, he bringing and contributing certain business which he was supposed to control. These negotiations finally resulted in the execution of a written contract of which certain introductory recitals are important. These read: "Whereas, the party of the second part (appellant) has represented to the party of the first part (respondent) that he is able to procure, as hereinafter stated, contracts from the parties hereinafter named, whereby the said parties and each of them bind themselves to turn over to the said Studwell or any person or corporation engaged in the warehouse business and possessing adequate facilities with whom he may become connected, the business of storing all of the cotton which such parties and each of them may cause to be brought to the port of New York during the period of one year from September first, 1895, at the rates hereinafter mentioned; and * * * Whereas, the party of the first part, upon the basis of the said representations, and upon the terms hereinafter set forth, is desirous of entering into the warehousing business, and of procuring in that connection the services of the said party of the second part:" The contract after these recitals amongst other things provided that the appellant was to enter the employ of the respondent for the period of five years, during which period he was to give to the latter "the exclusive benefit of his whole time, skill and services," and "act solely for the

said party of the first part," and "perform for the party of the first part and such other persons, corporations or parties designated by him (it) all such services whether connected with the warehouse business or otherwise," as the employer might require. He was to "devote his entire time to said employment," and was not during the said period to "engage or become interested directly or indirectly in any other business or occupation of any nature whatsoever." He was to produce and assign to the respondent or its nominee certain contracts or agreements with various parties with whom he had theretofore had dealings, whereby such parties would give to the respondent for a certain period their cotton warehouse business. The respondent agreed to pay a certain fixed compensation and also to allow certain additional compensation or commissions for the computation of which provision was made in the contract. When this contract was executed it seems to have been the subject of some criticism by appellant, and the result was that respondent's president wrote and delivered to him a letter which, so far as material, read: "At your request I make the following statements in writing * * * 3rd. If at any time any offer for the purchase of our entire dock and warehouse property which is procured by your efforts is accepted by us it is our intention to allow you a commission to be agreed upon between us before the sale is effected."

Under this and other contracts and of which none are helpful to him or material in this discussion, appellant continued in the employ of respondent and its successor or assignee for several years without making any claim such as is now set forth. He was finally discharged by respondent's successor and then brought this action.

I have quoted from the complaint showing that appellant's claim is that he is entitled to a certain percentage of the sum claimed to have been realized by respondent on the sale of its property as compensation for his services in building up and managing respondent's ware-

house business and for bringing to it certain good will and warehouse contracts and business which he controlled. The evidence directly supporting this claim is that of conversations between appellant and respondent's president in the course of the negotiations which led up to the written contract, and this testimony again makes very clear the nature of appellant's present claim. Thus he testifies that in his negotiations with Mr. Bush before the written contract was executed he told him "of my experience in working up a business for the New York Warehouse Company and having been sold out and left high and dry and that I didn't want an experience like that to happen again. That if I succeeded in building up a business down there which should render his undeveloped property salable, which it wasn't in its then condition, that I wanted to be paid a fair and reasonable percentage of the sale price, a percentage based upon the percentage my business might bear to the business then sold. * * * After I had stated what I wanted he (Mr. Bush) stated that he would accede to those propositions and that he would have a contract drawn up by his lawyer which would embody them."

Thus as the basis of this action we have evidence of an alleged parol agreement preceding or accompanying the execution of a written contract and are brought to the immediate and decisive inquiry whether both may stand. As already indicated I think they cannot.

Without recapitulating what has already been said in reference thereto it seems to me that a fair analysis and comparison of the complaint and evidence with the provisions of the written contract clearly demonstrate that appellant is seeking under his parol contract, because of alleged special circumstances, to recover extra compensation for the very services and good will which he was obliged to contribute under a contemporaneous written contract for a compensation therein fixed and widely differing from that now claimed. The written contract in broad

and unqualified terms required of him his undivided services and skill and the contribution of contracts and good will, and notwithstanding this he is attempting to establish a parol contract for the purpose of covering an alleged exception or omission when the written contract covers the entire relations of the parties and shows no omission or exception. Under such circumstances his efforts if permitted would result not in supplementing a written contract concerning matters not covered thereby, but rather in varying and contradicting by parol the provisions of an instrument whereby the parties have fully and absolutely expressed their engagements.

Whether or not it be difficult to reconcile all that has been written on this subject of the application of parol testimony to written contracts, there is no doubt about the agreement of the courts concerning the fundamental principle which appellant would violate. This principle is sufficiently expressed in *Thomas* v. *Scutt* (127 N. Y. 133) where the court in discussing the exceptions to the general rule that evidence of parol agreements may not be received to contradict or vary the terms of an instrument in writing, says of the class of exceptions alone applicable here (p. 138): "The second class embraces those cases which recognize the written instrument as existing and valid, but regard it as incomplete, either obviously, or at least possibly, and admit parol evidence, not to contradict or vary, but to complete the entire agreement of which the writing was only a part. * * * Two things, however, are essential to bring a case within this class: 1. The writing must not appear upon inspection to be a complete contract, embracing all the particulars necessary to make a perfect agreement and designed to express the whole arrangement between the parties. * * * 2. The parol evidence must be consistent with and not contradictory of the written instrument."

If the letter already quoted from, which was subsequently written and delivered to appellant by respondent's

president, be regarded as a modification and amplification of the original contract it does not help any. That letter clearly does not provide for extra compensation in a case of sale of respondent's property without the efforts and assistance of appellant, and even if respondent consented to an extension of the original contract in one direction this would not operate to extend it in another. Appellant's attempt to make this letter beneficial to his present cause of action illustrates how far away he would lead us from all established rules forbidding the use of parol testimony for the purpose of varying written instruments. He testifies in effect that when this letter was given to him he criticized the clause which has been quoted on the ground that it "might be construed to mean that I would have to go out and sell the property" (precisely what it did say), and to which respondent's president responded, "No, Studwell * * * what I mean by that is if at any time any offer for the purchase of our entire dock and warehouse property which is procured by your efforts in building up that property is accepted by us you shall be paid a fair and reasonable percentage."

Of course if the plain meaning of written contracts may be avoided by parol evidence that the parties agreed they meant something which they did not say, we have reached a summary and effectual method of destroying some of the important principles which have heretofore controlled the construction of written instruments.

The judgment appealed from should be affirmed, with costs.

CULLEN, Ch. J., GRAY, HAIGHT, VANN, WERNER and WILLARD BARTLETT, JJ., concur.

Judgment affirmed.