UNION BANK OF BROOKLYN v. FLEITMANN.

(Supreme Court, Appellate Division, Second Department. June 4, 1915.)

1. BILLS AND NOTES ⬿97—ACTIONS—DEFENSES—FAILURE OF CONSIDERATION.
   A bank to whom an individual had given notes in consideration of its promise to advance equal amounts to another bank, in which the maker was interested at the time the notes became due, cannot recover on the unpaid notes, where it had refused to pay the corresponding installments to the other bank, even though judgment had been rendered for such installments, if that judgment had not yet been satisfied.

   [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 166–173, 175–181, 185–192, 196–198, 200, 202, 205, 208–212, 1372–1376; Dec. Dig. ⬿97.]

2. EVIDENCE ⬿441—PAROL EVIDENCE AFFECTING RIGHTS—NOTE AND COLLATERAL.
   Where demand notes pledging collateral gave the payee authority to sell the collateral at its option on nonperformance of the promise and without notice parol evidence was inadmissible to show an agreement between the president of the bank and the maker of the notes that the latter should have the right to direct the disposal of the collateral, and the maker cannot recover damages for a sale of the collateral by the bank at a time when the market was low.

   [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1719, 1723–1763, 1765–1845, 2030–2047; Dec. Dig. ⬿441.]

⬿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
   153 N.Y.S.—59

Appeal from Trial Term, Kings County.

Action by the Union Bank of Brooklyn against F. Augustus Heinze, in which Lida M. Fleitmann, as administratrix of the estate of said defendant, was substituted as defendant. From a judgment for the plaintiff for a part only of its demand, plaintiff appeals. Reversed, and new trial granted.

Argued before THOMAS, CARR, STAPLETON, RICH, and PUTNAM, JJ.

Joseph G. Deane, of New York City (Rufus O. Catlin, of Brooklyn, on the brief), for appellant.

Nash Rockwood, of Saratoga Springs (L. B. McKelvey, of Saratoga Springs, on the brief), for respondent.

PUTNAM, J. The plaintiff's 24 causes of action were disposed of by the trial court without sending any to the jury. Mr. Heinze admitted a liability of $195,451.74 upon the first 7 causes of action, which took them out of controversy. The other causes of action upon a series of 17 promissory notes, given by Mr. Heinze to the plaintiff or to the prior corporation, the Mechanics' & Traders' Bank were dismissed. The counterclaim, for not selling collateral pledged to plaintiff to secure Mr. Heinze's note, was left to the jury, who gave a verdict for $149,-825. The excess of $195,451.74 over this counterclaim left a judgment in plaintiff's favor for $45,526.74, from which plaintiff appeals.

[1] The dismissed causes of action arose from Mr. Heinze's notes given to secure the Mechanics' & Traders' Bank for payments which it agreed to make periodically to the State Savings Bank of Butte, Mont., in which Mr. Heinze had been largely interested. As the present plaintiff, the Union Bank, succeeded to the Mechanics' & Traders' Bank in the course of these proceedings, the term "plaintiff" will be applied here to both banks. After plaintiff had opened a credit of $200,-000 in favor of the Butte bank, it gave a written agreement for its future payments at stated intervals. This had been modified, so as to prolong the period for such advances. When the cause of action arose, the agreement of 1908 was in force, by which plaintiff's installment payments to the Butte bank were spread over three years; the last being on December 1, 1911. Mr. Heinze was to execute 37 new notes, payable on the dates of the plaintiff's promised payments to the Butte bank "to the order of the Mechanics' & Traders' Bank to secure the repayment of the funds so to be paid to the party of the second part" (the Butte bank). Mr. Heinze also signed this agreement, and gave plaintiff the 37 notes as therein provided.

The Mechanics' & Traders' Bank and plaintiff, its successor, made its stipulated payments to the Butte bank, and Mr. Heinze paid his installment notes corresponding to such payments, which, however, stopped after June, 1911, leaving 17 installments in default. Therefore Mr. Heinze declined to pay the last 17 notes. Although the Butte bank obtained judgment for $85,000 against plaintiff for this default, no part of this judgment has been paid. Accordingly the learned trial justice, finding these facts undisputed, held that plaintiff had no cause of action as to these notes, since it had not complied with the terms of its agree-

ment.  Having made no payments which the notes were given to secure, it could not claim on the notes for reimbursement.  In this the learned court was clearly right.

[2]  This left Mr. Heinze's counterclaim for the bank's misuse of his collateral deposited to secure loans made in 1907.  Mr. Heinze pleaded that he had a right to redeem such collateral, by paying the market value of such stocks and securities, such payments to reduce the loans.  Alleging a demand and refusal to permit such redemption, by which the collateral had been depreciated, Mr. Heinze's damage was counterclaimed at $250,000.  It appeared that Mr. Heinze had given the demand notes in the usual form, pledging collaterals, by which he recited having deposited certain securities "with authority to sell the same at the Board of Brokers of the City of New York, or other cities, or at public or at private sale, at the option of said bank, on the nonperformance of this promise, and without notice."  Here follow other provisions, to the effect that the note comes due on insolvency of the maker, that the agreement shall apply to substituted collaterals, also that by further deposits the borrower shall keep the collateral at a margin of 20 per cent. over the debt; otherwise, on the borrower's failure, the lender may immediately sell the securities and apply the proceeds to the debt.

Notwithstanding these express terms, parol evidence was admitted, over plaintiff's objection and exception, of a different agreement made with the former president of the plaintiff's predecessor, to the effect that the right to market this collateral, and to say how and when it should be disposed of, was reserved and remained vested in the defendant, and the verdict on the counterclaim was for a breach of such verbal promise.  The note which carried this collateral bears the date of October 17, 1907.  On the day before (October 16th) was the interview, as Mr. Heinze told it, when he was applying for a further loan.  That Mr. Heinze stated as a condition (to which he says Mr. Sullivan, the president of the bank, agreed) that Heinze should—

"be allowed to handle the disposal of the collateral, so that the collateral would not be slaughtered in the market, and the loan which he was then making to me, with the other loans, should be carried for some time, so that an opportunity would be given to dispose of the collateral on a market which was different from the one that existed at that time."

On cross-examination Mr. Heinze restated this conversation, but with greater stress on the depreciation to follow if large amounts of the collateral should be thrown on the market, "particularly at the time of the panic."  Mr. Heinze, however, admitted that he knew when he signed the note that no such power was contained in it, so that fraud or mistake was not claimed.

As the note evidencing this collateral loan was a complete contract, which in the form of commercial paper stated what Mr. Heinze was to do, and what were the bank's rights over the security pledged, this parol testimony was ineffective.  It contradicted the instrument in its vital essentials.  If its express terms could be thus negatived and avoided by parol evidence, then no bank, or lender, has any safeguard in taking commercial paper.

Counsel for respondent, however, argues that this note was but part of a larger scheme. that Mr. Heinze had engineered, a far-reaching plan of dealing with his peculiar collateral, reversing the power of control, so that, regardless of the note's wording, the borrower was to manage the disposition of the pledged securities. Had this alleged promise been that before selling the securities the borrower was merely to be consulted, even that would be repugnant to the broad express power to sell, either at public or private sale, at the bank's option, *without notice*. But by this parol evidence Mr. Heinze completely reverses the power given in the note. He (the pledgor) is to handle, control, and direct the sale of these securities pledged. The hypothecation becomes a mere sham, if the sale of the securities remains dependent on the debtor's will, so that the pledgee becomes subject to the borrower's direction and mandate. The admission, therefore, of such testimony was error. Studwell v. Bush Co., 206 N. Y. 416, 100 N. E. 129; Thomas v. Scutt, 127 N. Y. 133, 27 N. E. 961; Jamestown Business College Assn. v. Allen, 172 N. Y. 291, 64 N. E. 952, 92 Am. St. Rep. 740.

The judgment and order must therefore be reversed, and a new trial granted; costs to abide the event. All concur.