LADIS LEWKOWICZ, Appellant, *v.* QUEEN AEROPLANE COMPANY, Respondent.

Jurisdiction — City Court of New York city — provision of statute (Code Civ. Pro. § 315; amd. L. 1911, ch. 569) authorizing said court, in actions for the recovery of money only, to render judgment for $5,000, is in conflict with State Constitution (Art. 6, §§ 14, 18).

1. The power to render judgment is as integral a part of the jurisdiction of a court as the power to entertain the cause of action.

2. The amendment to section 315 of the Code of Civil Procedure by chapter 569, Laws of 1911, which raised the amount for which

the City Court of the city of New York was authorized to render judgment in actions for the recovery of money only from the sum of $2,000 to the sum of $5,000, is in conflict with the provisions of the State Constitution (Art. 6, §§ 14, 18).

*Lewkowicz* v. *Queen Aeroplane Co.*, 154 App. Div. 142, affirmed.

(Argued January 13, 1913; decided January 28, 1913.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered December 26, 1912, which reversed an order of the Appellate Term affirming an order of the City Court of the city of New York denying a motion to reduce the amount of a judgment theretofore entered in the above-entitled action, and granted said motion.

The facts, so far as material, and the question certified are stated in the opinion.

*Eugene I. Gottlieb* for appellant.   Chapter 569 of the Laws of 1911 gave the City Court no new jurisdiction.   It did not " confer " on the City Court any jurisdiction.   It merely changed the limit.   Changing the limit for which judgment may be entered does not affect the jurisdiction of the City Court.   The term " jurisdiction," as used in the provisions of the Constitution, refers to subject-matter and persons rather than to the locality in which, or the amount for which actions may be brought.   (*Mollan* v. *Torrance*, 22 U. S. 537; *Ralli* v. *Pearsall*, 69 App. Div. 254.)   The constitutional provision that " the Legislature shall not hereafter confer upon an inferior or local court of its creation any equity jurisdiction or any greater jurisdiction in other respects than is conferred upon the County Court by or under this article " relates only to such local and inferior courts which might thereafter be established by the legislature.   (Const. of N. Y. art. 6, § 18.)   A statute will be declared unconstitutional only when it can be shown beyond reasonable doubt that it conflicts with the fundamental law, and until every

reasonable mode of reconciliation of the statute with the Constitution has been resorted to and reconciliation has been found impossible, the statute will be upheld. (*People ex rel. Henderson* v. *Supervisors,* 147 N. Y. 1; *Worthington* v. *London G. & A. Co.,* 164 N. Y. 84; *People* v. *Budd,* 117 N. Y. 1.)

*David Leventritt* for intervenor. Every doubt must be resolved in favor of the constitutionality of the act. (*People ex rel. Henderson* v. *Supervisors,* 147 N. Y. 1; *Koch* v. *Mayor, etc.,* 152 N. Y. 72.) Section 18 of article 6 of the Constitution related solely to inferior local courts to be created in the future and limited the jurisdiction that could be conferred on such courts and did not restrict the jurisdiction, present or future, of previously existing courts. (*People ex rel. Townsend* v. *Porter,* 90 N. Y. 68; *Irwin* v. *M. S. Ry. Co.,* 38 App. Div. 253; *Worthington* v. *L. G. & A. Co.,* 164 N. Y. 81; *Meuthen* v. *Eyelis,* 33 Misc. Rep. 98; *Sokolski* v. *Schenkel,* 50 Misc. Rep. 151; *Nelson* v. *Hajek,* 67 Misc. Rep. 128; *Dodge Mfg. Co.* v. *Nassau S. C. Co.,* 44 App. Div. 604.)

*Louis Marshall, Jerome H. Buck* and *Robert Leslie Moffett* for respondent. Chapter 569 of the Laws of 1911, in so far as it seeks to extend the power of the City Court of the city of New York to render a judgment for a sum in excess of $2,000 in an action wherein the complaint demands judgment for a sum of money only, is invalid, in that it violates the prohibitions of sections 14 and 18 of article 6 of the Constitution. (*McCann* v. *Gerding,* 29 Misc. Rep. 283; 3 Lincoln's Const. History, 360, 366; *Rhode Island* v. *Massachusetts,* 12 Pet. 718; 1 Black on Judgments [2d ed.], § 215; *Windsor* v. *McVeigh,* 93 U. S. 274; *United States* v. *Walker,* 109 U. S. 258; *People ex rel. Tweed* v. *Liscomb,* 60 N. Y. 559; *Hovey* v. *Elliott,* 145 N. Y. 126; 167 U. S. 409; *Knickerbocker Trust Co.* v. *O., etc., R. R. Co.,* 201 N. Y. 384;

*Howard Iron Works* v. *Buffalo Elevating Co.*, 176
N. Y. 1; *Gillin* v. *Canary*, 19 Misc. Rep. 594; *Irwin* v.
*M. S. Ry. Co.*, 38 App. Div. 253; *Worthington* v. *London
G. & A. Co.*, 164 N. Y. 81; *Ralli* v. *Pearsall*, 69 App.
Div. 254; *Darling* v. *White*, 67 Misc. Rep. 366.)

CULLEN, Ch. J.   There is but one question presented
upon this appeal, the constitutionality of chapter 569, Laws
of 1911, which amended section 315 of the Code of Civil
Procedure so as to raise the amount for which the City
Court of the city of New York was authorized to render
judgment in actions for the recovery of money only from
the sum of $2,000 to the sum of $5,000.   The provision of
the Constitution which it is contended the statute in ques-
tion contravenes is section 18 of article 6: " Inferior local
courts of civil and criminal jurisdiction may be estab-
lished by the Legislature, but no inferior local court here-
after created shall be a court of record.   The Legislature
shall not hereafter confer upon any inferior or local court
of its creation, any equity jurisdiction or any greater
jurisdiction in other respects than is conferred upon
County Courts by or under this article."   By section 14
of the same article, which continued the County Courts
with original jurisdiction in actions to recover money in
which judgment was demanded for a sum not exceeding
$2,000, it is enacted that " The Legislature may hereafter
enlarge or restrict the jurisdiction of the County Courts,
provided, however, that their jurisdiction shall not be so
extended as to authorize an action therein for the recov-
ery of money only, in which the sum demanded exceeds
two thousand dollars."   The proposition is that, since
jurisdiction could not be conferred upon the County
Courts to entertain actions for the recovery of a greater
sum than $2,000, the power to confer jurisdiction upon
the City Court of New York was equally limited.   As to
the correctness of this proposition, the learned courts
below have differed.   The Appellate Division has held

the statute unconstitutional, while the Appellate Term decided it was valid.

While we fully appreciate the force of the rule urged by the learned counsel for the appellant that "A statute can be declared unconstitutional only when it can be shown beyond reasonable doubt that it conflicts with the fundamental law, and until every reasonable mode of reconciliation of the statute with the Constitution has been resorted to, and reconciliation found impossible, the statute will be upheld" (*People ex rel. Henderson* v. *Board Suprs. Westchester Co.*, 147 N. Y. 1, 2), we are clear that the statutory provisions before us cannot be sustained, and that the decision of the Appellate Division was right. In the opinion of Mr. Justice CLARKE there is found a history of the origin and subsequent development of the City Court of New York and a very full reference to the debates in the constitutional convention by which section 18 was formulated. In that opinion we concur, but desire to express briefly the dominant considerations which control our action.

The constitutionality of the legislation is sought to be sustained substantially on two grounds: *First,* that the provision forbidding the legislature to confer any greater jurisdiction on inferior local courts of its creation than that conferred by the Constitution on the County Courts, is applicable only to courts created by it subsequent to the enactment of the Constitution of 1894, which the City Court long antedated. *Second,* that the increase in the sum for which the court was authorized to render judgment was not conferring upon it jurisdiction. To neither of these claims do we accede. As a matter of mere phraseology we think the purport of the Constitution is clear. The provision that no inferior local court thereafter created shall be a court of record, and the provision that the legislature shall not thereafter confer on any court of its creation any greater jurisdiction than that conferred on the County Courts, are found in separate

sentences and constitute separate and distinct restrictions. If it were intended that the second restriction should apply only to courts subsequently created, there would have been no reason for the change of language found in the two sentences. The natural manner of expressing such an intent would be to continue the first sentence so as to read, "no inferior local court hereafter created shall be a court of record, nor shall the legislature confer upon it any equity jurisdiction, nor any greater jurisdiction than is conferred by this article upon County Courts." This is so clear to our minds as to forbid elaboration.

But if there were any doubt as to the proper construction of this section, we think it is removed by a review of the action of our several constitutional conventions on the subject of local courts. Before entering upon this subject, it may be observed that if the restriction found in the second sentence — that forbidding the legislature from conferring any equity jurisdiction on local courts — is confined to subsequently created courts, it would seem wholly superfluous. The preceding sentence had forbidden the legislature to constitute such courts courts of record, and it is hardly conceivable by any one familiar with the constitution and jurisdiction of the various courts that have existed in our state that equity jurisdiction should be conferred on a court not of record, for the great majority of judgments which affect the title to real estate are decrees of courts of equity.

Before the Constitution of 1869 four superior local courts existed in this state — the Common Pleas and Superior Court of the city of New York, the City Court of Brooklyn and the Superior Court of the city of Buffalo. By that Constitution those courts were continued, the number of judges increased, their official terms prescribed, and it was enacted that they should possess the jurisdiction that they then had and such further jurisdiction as might be conferred upon them by law. Thus,

they became constitutional courts beyond the power of the legislature to abrogate and whose jurisdiction could not be impaired. In addition to those courts were the Courts of Oyer and Terminer which, though always presided over by a judge of the Supreme Court, were usually held in association with a county judge and justices of the peace; Courts of Sessions, held by the county judge also in connection with justices of the peace, and Circuit Courts. So this system continued until the Constitution of 1894, when by that Constitution the City Courts were abolished as were also the Courts of Oyer and Terminer, Courts of Sessions and Circuit Courts, and the jurisdiction of all these courts was conferred on either the Supreme Court or the County Courts, and the number of the Supreme Court judges was increased. As was said by Judge VANN in *Koch* v. *Mayor, etc., of N. Y.* (152 N. Y. 72, 78): "The theory was to simplify the judicial system by reducing the number of high courts and to embed those retained so thoroughly in the fundamental law that they could not be changed or abolished without amending the Constitution." So also we said in *People ex rel. Swift* v. *Luce* (204 N. Y. 478, 487): "It is even more plain under the Constitution of 1894 that the higher courts there enumerated are intended to be exclusive, because not only the city courts above mentioned, but the courts of Oyer and Terminer, General Sessions and Circuit Courts were abolished, and it certainly was not contemplated that the legislature should be empowered to create any similar courts though with different names." At the time of the adoption of the Constitution of 1894 (November, 1894) there were at least seven inferior local courts which were courts of record, and a number of such courts which were not of record which I have not ascertained. If the construction contended for by the appellant is to be accepted there was nothing to prevent the legislature from conferring on those seven courts the same power and jurisdiction which the City Courts abol-

ished by the Constitution formerly had, nor indeed from changing any of the other existing inferior courts into courts of record and conferring upon them similar jurisdiction, for the limitation against creating courts of record is applicable only to courts subsequently created. It is impossible to imagine that the Constitution intended to place it within the power of the legislature to re-establish a system which it had been so careful to abolish. The reason for the difference in the phraseology of the two sentences is apparent.   As already said, there were seven courts which were courts of record.   It was not intended to alter the character of those courts; a change which might have produced much confusion, if no other evils. Therefore, the inhibition in the first sentence of the section was restricted to future courts, while that found in the second is broad and general.   So, if we were ignorant of the debates in the convention which framed the Constitution, the facts recited would compel the conclusion that it was not intended to allow the legislature to increase the jurisdiction of local inferior courts beyond that of the County Courts as prescribed by the Constitution.   A perusal of the debates of the convention, which are fully recited in the opinion of the Appellate Division, supports these views.

The second ground, that the increase of the sum for which the court was authorized to render judgment was not an increase of the jurisdiction of the court, may be summarily dismissed.   The argument is based on the manner in which the power of the City Court was limited by sections 315 and 316 of the Code of Civil Procedure. Section 315 provided that the jurisdiction of the City Court of New York should extend to certain cases which, except as to judgments obtained by confession, did not depend on the amount sought to be recovered.   But by section 316 it was enacted that the jurisdiction conferred by the previous section was subject to the limitation that no judgment should be rendered in favor of the plaintiff

in excess of the sum of $2,000, except in an action to recover damages for breach of a contract of marriage or for a marine cause. The power to render judgment is as integral a part of the jurisdiction of the court as is the power to entertain the cause of action. (*Ex parte Lange*, 18 Wall. 163; *People ex rel. Tweed* v. *Liscomb*, 60 N. Y. 559; *Kamp* v. *Kamp*, 59 id. 212; *Knickerbocker Trust Co.* v. *Oneonta, C. & R. S. R. Co.*, 201 id. 379, 384; *Bigelow* v. *Forrest*, 75 U. S. 339; *Day* v. *Micou*, 85 id. 156.) So far and in such cases as the power to render judgment exceeded at the time of the adoption of the present Constitution that prescribed for the County Courts, it was not impaired, but the power could not thereafter be enlarged beyond that limit.

The order appealed from should be affirmed, with costs, and the question certified, which is, is chapter 569, Laws of 1911, unconstitutional, answered in the affirmative.

WERNER, HISCOCK, CHASE, COLLIN and HOGAN, JJ., concur; WILLARD BARTLETT, J., absent.

Order affirmed.