(161 App. Div. 844)

### SEELEY et al. v. OSBORNE.

(Supreme Court, Appellate Division, First Department.   April 17, 1914.)

1. COURTS (§ 168*)—INFERIOR COURTS—CITY COURT OF CITY OF NEW YORK—JURISDICTION.

The City Court of the city of New York has jurisdiction, under Code Civ. Proc. §§ 315, 316, as existing prior to the invalid amendment by Laws 1911, c. 569, of an action for a money judgment for any amount, but cannot render judgment in excess of $2,000, exclusive of interest and costs.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 379, 413, 440, 443; Dec. Dig. § 168.*]

2. COURTS (§ 190*)—CITY COURT—APPEAL—REDUCTION OF JUDGMENT.

The Appellate Term, on appeal from a money judgment of the City Court of the city of New York in excess of $2,000, has jurisdiction to reduce the judgment to $2,000, with interest and costs, and thereby limit the amount of recovery to the jurisdiction of the court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 103, 3379½, 3381; Dec. Dig. § 190.*]

3. JUDGMENT (§ 589*)—RES JUDICATA—QUESTIONS CONCLUDED.

A judgment for plaintiff, suing defendant for fraud in inducing him to enter into a contract, is not a bar to an action by him for failure of defendant to subsequently carry out a stipulation of the contract.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1062–1065, 1100, 1101; Dec. Dig. § 589.*]

4. EVIDENCE (§ 442*)—PAROL EVIDENCE—VARYING WRITTEN INSTRUMENTS.

An instrument which recited that plaintiffs had received of defendant a specified number of shares of stock of the B. Company, free and clear, in exchange in full payment for a designated number of shares of stock of the D. Company, and a subsequent written agreement between one of the plaintiffs and defendant by which he gave to defendant power to negotiate for the sale of the stock of the B. Company, and whereby defendant guaranteed not to dispose of the stock for less than a specified sum, and agreed to carry out the sale within a specified time, taken together, constitute a complete agreement between the parties, and prior oral contracts were merged therein, and a prior parol contract could not be proved.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1874–1897; Dec. Dig. § 442.*]

5. LIMITATION OF ACTIONS (§ 66*)—ACCRUAL OF CAUSE OF ACTION.

A contract gave plaintiff the privilege to take, as he wanted, sets of teeth manufactured by a dental supply company at a price fixed, and bound defendant to see that plaintiff received the sets as wanted at a price fixed. No time was fixed within which plaintiff was entitled to demand and receive the sets, and plaintiff at no time made a demand on defendant to perform. Held, that an action on the contract, begun more than nine years after the making thereof, was barred by limitations, within Code Civ. Proc. § 410, providing that where a right exists, but a demand is necessary to entitle the maintenance of an action, the time within which the action must be commenced must be computed from the time when the right to make the demand is complete, since the demand by plaintiff on defendant to perform must have been made within a reasonable time.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 353–375; Dec. Dig. § 66.*]

6. CONTRACTS (§ 277*)—PERFORMANCE—DEMAND FOR PERFORMANCE.

Where a contract provided that plaintiff should demand performance by defendant, a demand by letter, written to defendant, sent by mail, and to

which no answer was received, was not a sufficient demand to put defendant in default.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1217–1232; Dec. Dig. § 277.*]

Dowling and Clarke, JJ., dissenting.

Appeal from Appellate Term, First Department.

Action by Lewis S. Seeley and another against Dean C. Osborne. From a determination of the Appellate Term (83 Misc. Rep. 409, 145 N. Y. Supp. 237) reducing and affirming a judgment of the City Court of the City of New York for plaintiffs, defendant appeals. Reversed, and judgment ordered for defendant.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Alexander Thain, of New York City, for appellant.

Wentworth, Lowenstein & Stern, of New York City, for respondents.

INGRAHAM, P. J.　The action was brought in the City Court to recover damages for the violation of a contract, made on September 16, 1903, whereby the defendant agreed to "cause the said Dental Supply Company of New York to sell and deliver to the plaintiffs from time to time, as they required them, 10,000 sets of artificial teeth at the rate of forty-five cents for each set of teeth or such part or parts of the said 10,000 sets as the plaintiffs, at their option, might request to be sold and delivered by the said Dental Supply Company of New York to them." It was further alleged that between September 16, 1903, and May 11, 1909, the defendant duly caused the said Dental Supply Company of New York to sell and deliver to the plaintiffs, as and when requested, and in exercise of their said option under said agreement, 2,170 sets of artificial teeth, at and for the price of 45 cents for each set of artificial teeth; that on various occasions, between May 11, 1909, and the commencement of this action, the plaintiffs requested the Dental Supply Company of New York, and also the defendant, to sell or cause to be sold and delivered to them the balance of the sets of artificial teeth, 7,830 sets, at and for the price of 45 cents per set, and the plaintiffs have always been ready and willing to receive and pay for the said 7,830 sets of artificial teeth, and on or about April 23, 1912, at the offices and place of business of the said Dental Supply Company of New York, duly offered to receive and pay for said 7,830 sets of artificial teeth at the rate of 45 cents per set of artificial teeth, pursuant to said agreement, and the plaintiffs have otherwise performed all the conditions thereof on their part; that said Dental Supply Company of New York has refused and neglected to deliver the said 7,830 sets of artificial teeth, or any part thereof, to the plaintiffs, to the damage of the plaintiffs in the sum of $5,000, for which sum the plaintiffs demand judgment. The defendant denies the allegations of the complaint, except that the Dental Supply Company of New York re-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

fused to sell and deliver the 7,830 sets of artificial teeth to the plain-tiffs. The answer further alleges, for a further separate and distinct defense, that the contract was not to have been performed within one year from the making thereof, and that the same was not in writing, signed by this defendant or by defendant's lawful agent, and for a further separate and distinct defense that more than six years have elapsed since the cause of action accrued upon which this action is based. It then alleged the recovery by the plaintiffs in the Supreme Court, Kings county, of damages for fraud in obtaining this contract as a bar to this action. The case came on for trial before the court without a jury, and the court found the contract as alleged in the complaint, that the plaintiffs had performed the conditions thereof on their part, that the contract was not by its terms to be performed within one year, and found the other facts alleged in the complaint, and awarded the plaintiffs damages in the sum of $3,915; and judgment was entered for the sum of $4,130.18. On appeal to the Appellate Term that court reduced the judgment to the sum of $2,000, with interest and costs, and, as thus modified, affirmed it, and then allowed an appeal to this court.

[1] After this judgment was entered, this court held that the amendment to the Code of Civil Procedure, made by chapter 569, Laws of 1911, which amended sections 315 and 316, was a violation of the Constitution, and therefore the amendment was void, and the Code remained as it was prior to this amendment. By section 315 of the Code of Civil Procedure, as it existed prior to the amendment, the jurisdiction of the City Court of the city of New York extended to "an action against a natural person, or against a foreign or domestic corporation, wherein the complaint demands judgment for a sum of money only, or to recover one or more chattels, with or without damages for the taking or detention thereof. * * *" That court therefore had jurisdiction of this action, although the amount was in excess of $2,000. By section 316 of the Code of Civil Procedure, the jurisdiction of that court is subject to the following limitation:

"In an action wherein the complaint demands judgment for a sum of money only, the sum, for which judgment is rendered in favor of the plaintiff, cannot exceed $2,000, exclusive of interest, and costs as taxed"—

and with some exceptions that are not material. The only limitation upon the jurisdiction of that court, therefore, is that it cannot award judgment in an action in excess of $2,000. Lewkowicz v. Queen Aeroplane Co., 154 App. Div. 142, 138 N. Y. Supp. 983, affirmed 207 N. Y. 290, 100 N. E. 796, in which this court held the amendment to sections 315 and 316 of the Code of Civil Procedure was void, it was held, following the case of Ralli v. Pearsall, 69 App. Div. 254, 74 N. Y. Supp. 620, that the court had jurisdiction of the action, although the complaint demanded judgment in excess of the amount that the court could grant, but that the court could not enter judgment in excess of the amount to which the court was limited. These decisions require this court to hold that a judgment may be recovered in the City Court, not exceeding $2,000, exclusive of interest and costs as taxed.

[2] This decision was sustained in the Court of Appeals (207 N. Y. 290, 100 N. E. 796). Therefore, the court having jurisdiction of the action, and the only limitation upon that jurisdiction being that a judgment should not be entered for more than $2,000, exclusive of interest and costs as taxed, the court had power to reduce the judgment to an amount within the limit ,of its jurisdiction. The court was not bound to reverse the case and send it back for a new trial; the only result of a new trial being that judgment for $2,000 could be entered.

[3] Nor do I think the judgment in the action in the Supreme Court, Kings county, was a bar to this action. That action was based upon the false and fraudulent misrepresentations by which the plaintiffs were induced to transfer 45 shares of the stock of the Dental Supply Company to the defendant. The consideration for the transfer, as alleged in the complaint in that action, was that the defendant should transfer to the plaintiffs 1,200 shares of the stock of the Butterick Painless Dental Company. The plaintiffs alleged that the defendant made certain false and fraudulent misrepresentations as to the value of the stock of the Butterick Painless Dental Company, and, relying upon these false and fraudulent misrepresentations, the plaintiffs transferred the 45 shares of the stock of the Dental Supply Company to the defendant, and the defendant transferred the stock of the Butterick Painless Dental Company to the plaintiffs. In the complaint in that action there was no mention of the contract here sued on, but the complaint alleged that by reason of the transfer of the stock of the plaintiffs in the Dental Supply Company for the stock of the Butterick Painless Dental Company, induced by these false and fraudulent misrepresentations, the plaintiffs were damaged in the sum of $10,500. That action was not brought to rescind the contract, but for damages sustained by the false and fraudulent misrepresentations as to the value of the stock of the Butterick Painless Dental Company, which the plaintiffs were to receive in consideration of their transfer of the 45 shares of the Dental Supply Company. The plaintiffs affirmed the contract and demanded damages sustained by the plaintiffs' being induced to enter into the contract by the false and fraudulent misrepresentations of the defendant. Having recovered damages sustained by these false and fraudulent misrepresentations, the stock of the Butterick Painless Dental Company remained the property of the plaintiffs, and the stock of the Dental Supply Company remained the property of the defendant. By that judgment the parties were placed in the same position as if there had been no false and fraudulent misrepresentations. The original contract remained in force. In this action, however, the plaintiffs allege that, as part of the consideration for that transfer, the defendant made this contract, a breach of which is the foundation of this action. Upon the trial of this action it appeared that the plaintiffs owned the 45 shares of the stock of the Dental Supply Company, which on September 16, 1903, were transferred to the defendant.

One of the plaintiffs, Mary A. Seeley, testified the defendant came in and offered to the plaintiffs to purchase 45 shares of the stock of the Dental Supply Company, his first offer being to pay $17,500 in cash,

or $15,500 in cash and the privilege to take, as the plaintiffs required them, 10,000 sets of teeth manufactured by the Dental Supply Company, known as Twentieth Century teeth, at the price of 45 cents a set; that this offer was not accepted; that on September 16, 1903, the defendant called on the plaintiffs and then said he could not pay $15,500 in cash, but he had some stock, in fact the majority, of the Butterick Painless Dental Company of Brooklyn, worth $15,500 or more, and that he would turn that stock over to the plaintiffs and the privilege of getting 10,000 sets of teeth at 45 cents a set; that defendant said he would get those teeth because he was already an officer of the Dental Supply Company, and was also related to the other officers of the Dental Supply Company by blood and marriage, and that, by acquiring the 45 shares of stock of the plaintiffs, he would have a majority of the stock, and that he would see that the plaintiffs got, as they wanted them, the 10,000 sets of artificial teeth at 45 cents a set. The witness was then asked whether the defendant said the plaintiffs could get the 10,000 sets of teeth from him or from the Dental Supply Company, and the witness replied that the defendant said from the Dental Supply Company. The witness then testified that the plaintiffs accepted the second proposal, to take the stock of the Butterick Painless Dental Company and the privilege to purchase 10,000 sets of artificial teeth at 45 cents a set from the Dental Supply Company; that the defendant had said that, by acquiring the 45 shares of the stock of the Dental Supply Company, he would have the majority of the stock of that company, and would be able to carry it out, and "that he would see that the Dental Supply Company would furnish the teeth when we would want them." That was on September 16, 1903. The witness then testified that subsequently the plaintiffs received 2,170 sets of artificial teeth from the Dental Supply Company at 45 cents a set, and that the last teeth were received on May 11, 1909; that towards the end of September, 1909, the witness went to the office of the Dental Supply Company and saw Mr. Shepard; that she told Mr. Shepard, "We need some more teeth, and we want to get about a thousand sets," to which Mr. Shepard replied that they could not let them have any more teeth at 45 cents a set; that on April 23, 1912, the witness again went to the office of the Dental Supply Company and saw Mr. Shepard, and said, "We are now prepared to take up the balance of the teeth that are coming to us under that agreement with Mr. Osborne (that is, the balance of the 10,000 sets of teeth)"; that Mr. Shepard replied that they could not have the teeth at 45 cents a set. On cross-examination the witness said that on September 16, 1903, the plaintiffs and defendant signed an agreement, and that agreement was read in evidence.

[4] The first question presented is whether there was any enforceable contract made by which the defendant bound himself either to sell and deliver the teeth or to procure the Dental Supply Company to sell and deliver the teeth. There were two written instruments executed at the time of this transaction, the first of which was dated September 16, 1903, and was as follows:

"New York, Sept. 16th, 1903. Received of D. C. Osborne eleven hundred and ninety (1,190) shares of the capital stock of the Butterick Painless Dental

Co. of Brooklyn, New York, free and clear, in exchange in full payment for forty-five (45) shares of the common stock of the Dentists' Supply Co. of New York."

This purported to express the contract between the parties. It was a receipt for the stock, but it stated the contract that the plaintiffs received the stock free and clear in full payment for the 45 shares of stock of the Dental Supply Company. The second written agreement was entered into September 22, 1903, between L. S. Seeley, one of the plaintiffs, and defendant, by which he gave to the defendant full right and power to negotiate for the sale of the capital stock of the Butterick Painless Dental Company, and the defendant guaranteed not to dispose of said stock for less than $15,500, and agreed to carry out the sale within six months. The written agreement between the parties, signed by the parties, stated the contract. It is complete in itself. It stated that the stock of the Butterick Painless Dental Company was in full payment for the stock of the Dental Supply Company. Having signed that paper as the contract of sale, the plaintiffs now seek to enforce an oral agreement by which, in addition to the stock of the Butterick Painless Dental Company, the defendant, as a payment for the transfer of the 45 shares of the Dental Supply Company, undertook to procure from the Dental Supply Company the sale and delivery of 10,000 sets of teeth to the plaintiffs at 45 cents a set. I am inclined to think that the prior oral negotiations were merged in this written contract, by which the consideration for the sale of the 45 shares of the stock of the Dental Supply Company was the transfer to the plaintiffs of the stock of the Butterick Painless Dental Company. That is the contract which the plaintiffs alleged in the former action, in the Supreme Court, Kings county, and in that action the recovery was based upon the fact that the stock of the Butterick Painless Dental Company was not of the value which defendant represented it to be, and that, in consequence of the false and fraudulent misrepresentations as to the value of that stock, the plaintiffs recovered $7,500. The contract proved in that action was the sale of the 45 shares of the stock of the Dental Supply Company for the stock of the Butterick Painless Dental Company; the consideration that this written instrument states for the sale of the stock of the Dental Supply Company being the stock of the Butterick Painless Dental Company, which was received by the plaintiffs in full payment for the 45 shares of the stock of the Dental Supply Company. Thus the contract was reduced to writing, and I am inclined to think that all prior oral contracts and negotiations were merged in that writing.

In Loomis v. New York Central & H. R. R. R. Co., 203 N. Y. 359, 96 N. E. 748, Ann. Cas. 1913A, 928, the court said:

"Thus the question presented is whether a written contract to transport goods from one place to another, duly signed by both carrier and shipper, but silent as to the route, can be varied by evidence of previous parol instructions, to ship by a particular route. The answer to this question is too clear to require extended discussion. No effect can be given to such evidence, even when received without objection, provided the court is asked in due form to instruct the jury that it was merged in the written agreement, if they found there was one. In order to prevent fraud, perjury, and mistake, one of the primary rules of evidence forbids that a written contract should be varied by evidence of

previous conversations or unsigned memoranda, which are all conclusively presumed to be embodied in the written instrument expressing the final meeting of the minds of the parties."

In Thomas v. Scutt, 127 N. Y. 133, 27 N. E. 961, the court states the general rule that evidence of what was said between the parties to a valid instrument in writing, either prior to or at the time of its execution, cannot be received to contradict or vary its terms, and states that to this rule there are two exceptions. The first exception includes those cases in which parol evidence has been received to show that that which purports to be a written contract is in fact no contract at all.

"Thus fraud, illegality, want of consideration, delivery upon an unperformed condition, and the like may be shown by parol, not to contradict or vary, but to destroy a written instrument."

The evidence here offered is not competent on this ground, as by the action in the Supreme Court, Kings county, the contract to deliver the 45 shares of the stock of the Dental Supply Company upon the transfer of the stock of the Butterick Painless Dental Company was affirmed, and damages recovered for the false and fraudulent misrepresentations which induced it. The second exception embraces those cases which recognize the written instrument as existing and valid, but regard it as incomplete, either obviously, or at least possibly, and admit parol evidence, not to contradict or vary, but to complete, the entire agreement of which the writing was only a part.

But this agreement would appear upon its face to be an entire agreement. It says that the plaintiffs have received from the defendant 1,190 shares of the stock of the Butterick Painless Dental Company, free and clear, "in full payment" for 45 shares of the stock of the Dentists' Supply Company of New York. This was a written instrument by which the plaintiffs admitted the receipt of the stock of the Butterick Painless Dental Company in full payment for the 45 shares of the stock of the Dentists' Supply Company, and plaintiffs now ask to prove that this instrument did not contain the true consideration for the sale of the 45 shares of the stock of the Dentists' Supply Company, but that, in addition to that expressed therein, there was an oral agreement by the defendant, not that he would pay anything more, but that he would procure the Dental Supply Company, stock of which had been sold by the plaintiffs to the defendant, to supply the plaintiffs 10,000 sets of artificial teeth at 45 cents a set.

In Thomas v. Scutt, supra, speaking of the second exception to the rule of evidence, the court said:

"Two things, however, are essential to bring a case within this class: (1) The writing must not appear upon inspection to be a complete contract, embracing all the particulars necessary to make a perfect agreement and designed to express the whole arrangement between the parties, for in such a case it is conclusively presumed to embrace the entire contract. (2) The parol evidence must be consistent with and not contradictory of the written instrument."

See, also, Lossing v. Cushman, 195 N. Y. 386, 88 N. E. 649.

In Studwell v. Bush Co., Ltd., 206 N. Y. 416, 100 N. E. 129, the

question was again presented to the Court of Appeals, and the case of Thomas v. Scutt, supra, was cited and approved. The court there said, speaking of the cause of action alleged in the complaint in that case:

"Without recapitulating what has already been said in relation thereto, it seems to me that a fair analysis and comparison of the complaint and evidence, with the provisions of the written contract, clearly demonstrate that appellant is seeking under his parol contract, because of alleged special circumstances, to recover extra compensation for the very services and good will which he was obliged to contribute under a contemporaneous written contract for a compensation therein fixed and widely differing from that now claimed."

Finally, in conclusion, the court said:

"Of course, if the plain meaning of written contracts may be avoided by parol evidence that the parties agreed they meant something which they did not say, we have reached a summary and effectual method of destroying some of the important principles which have heretofore controlled the construction of written instruments."

[5] I also think this claim is barred by the statute of limitations. According to the contract, as testified to by the plaintiffs' witness, the plaintiffs were to have this stock of the Butterick Painless Dental Company and "the privilege to take, as we wanted them, 10,000 sets of teeth manufactured by the Dental Supply Company, called Twentieth Century teeth, at the price of 45 cents a set," and that defendant "would see that we got, as we wanted them, 10,000 sets of teeth at 45 cents a set." There was no contract of sale by the defendant to the plaintiffs. He did not have 10,000 sets of teeth to deliver, and he did not agree to manufacture or to sell and deliver to the plaintiffs 10,000 sets of teeth. All that he agreed to do was to see to it that the Dental Supply Company delivered 10,000 sets of teeth to the plaintiffs. No time was fixed within which the plaintiffs were entitled to demand and receive the sets of teeth, and there certainly was implied in this contract that such demand should be made within a reasonable time. The plaintiffs applied to the Dental Supply Company and obtained such teeth as they wanted down to September, 1909. At no time was application made to the defendant to enforce the contract; no demand was made upon him that he should procure these sets of teeth from the Dental Supply Company; nor does it appear that defendant caused the Dental Supply Company to furnish the teeth to plaintiffs. Finally, about six years after the alleged contract was made, in August or September, 1909, the plaintiffs wanted more teeth, and at that time the officers of the Dental Supply Company, to whom the application was made, notified the plaintiffs that no more teeth would be furnished them at 45 cents a set. In this decision the plaintiffs seems to have acquiesced until September, 1911, eight years after the alleged contract was made, when the plaintiffs again saw the officer of the Dental Supply Company and told him that the plaintiffs needed more teeth. Again the officer of the Dental Supply Company told the plaintiffs they could not have any more teeth at 45 cents a set. Then on April 23, 1912, about nine years after the alleged contract was made, the plaintiffs went to the officer of the Dental Supply Company and said they were prepared to take

up the balance of the teeth to which they were entitled under the agreement with the defendant, and again the application was refused. During all that period no demand had been made upon the defendant to perform the contract, no request had been made to the defendant to procure the teeth from the Dental Supply Company. It seems to me clear that any demand against this defendant was barred by the statute of limitations. It is clear there was no cause of action against the defendant until a demand had been made upon him to comply with this contract. There was no contract with the Dental Supply Company. They had assumed no obligation to the plaintiffs, and were not bound to furnish any teeth to them. The defendant was bound to procure the Dental Supply Company to furnish the teeth, but, before there could be any liability, a demand must be made upon him to comply with his contract. Section 410 of the Code of Civil Procedure provides:

"Where a right exists, but a demand is necessary to entitle a person to maintain an action, the time, within which the action must be commenced, must be computed from the time, when the right to make the demand is complete * * *"

—with certain exceptions that do not apply to this case. I think this provision expressly applies. This was a case where, assuming that a valid contract was made, the plaintiffs were required to exercise their option within a reasonable time. They purchased various sets of teeth from the Dental Supply Company; the last purchase being May 11, 1909. That was within the six years' statute of limitations. In August or September, 1909, the plaintiffs desired to purchase more teeth from the Dental Supply Company at 45 cents a set, and the application was refused. No notice was given to the defendant. No demand was then made upon him to comply with his contract. Assuming that a reasonable time after making the alleged contract in September, 1903, would be a year, that would extend the time to September, 1904, in which the right existed, and certainly, that right not being exercised for six years thereafter, no cause of action existed, based on the refusal to perform that contract, and the recovery is therefore barred by the statute of limitations.

[6] Nor do I think there was a sufficient demand made by the plaintiffs upon the defendant. The only demand made was a letter, written to the defendant, sent by mail, and to which no answer was received. To put the defendant in default, it seems to me that something more was required than a letter written the day before the complaint was verified, and with no tender and with no personal demand.

I think, therefore, this judgment should be reversed, and, as it is clear that this plaintiff cannot recover, there should be judgment for the defendant, with costs and disbursements in all the courts.

SCOTT and HOTCHKISS, JJ., concur.

DOWLING, J. (dissenting). Concurring in what has been said by the PRESIDING JUSTICE as to the right of the Appellate Term to modify the judgment of the City Court by reducing the amount thereof

to $2,000, and as to the judgment in the Supreme Court, Kings county, not constituting a bar to this action, I am compelled to dissent from the conclusions reached therein as to the contract between plaintiffs and defendant not being enforceable and as to the statute of limitations constituting a bar to this action. The court has found the following finding of fact:

"First. That on the 16th day of September, 1903, the plaintiffs and defendant entered into an agreement whereby the defendant, in consideration of the plaintiffs assigning and transferring to the defendant 45 shares of the common stock of the corporation known as Dentists' Supply Company of New York, that he (the defendant), inter alia, would at any time thereafter, at the option and upon the request of the plaintiffs, cause the said Dentists' Supply Company of New York to sell and deliver to the plaintiffs, from time to time, as they required them, 10,000 sets of artificial teeth, at the rate of 45 cents for each and every set of teeth, or parts of the said 10,000 sets, as the plaintiffs, at their option, might request to be sold and delivered by the said Dentists' Supply Company of New York to them."

This finding is supported by the testimony of one of the plaintiffs, Mary A. Seeley, to the effect that defendant opened negotiations for the purchase of plaintiffs' stock in the Dental Supply Company, and at first offered them therefor: (1) $17,500 in cash; or (2) $15,500 in cash and the privilege of taking 10,000 sets of Twentieth Century teeth, manufactured by the Dental Supply Company, at the price of 45 cents a set. The first interview resulted in no agreement. She says, however, that the matter "was consummated on September 16, 1903, when defendant called upon plaintiffs, and said he could not pay $15,500 in cash, but offered them instead his stock in the Butterick Painless Dental Company to the extent of 1,190 shares, which he represented to be of the value of $15,500, together with the privilege of taking 10,000 sets of teeth at the price of 45 cents a set." This proposition was accepted by plaintiffs on the date heretofore mentioned, and "the matter was finally consummated." The defendant then assured the plaintiffs that he was in a position to confer the privilege of getting the 10,000 sets of teeth at 45 cents a set, which was below the then market price thereof, because the purchase of the plaintiffs' stock would give him the control of the company which was making the teeth; he was already an officer thereof, and was related by blood or marriage to the other officers. Upon the trial of this action, the defendant's testimony, given on the trial of the Kings county action, was read in evidence. Therein the defendant swore that he had asked the plaintiffs for two options: (1) To buy their stock at $17,500; or (2) "to turn over to them the Butterick Painless Dental Company stock, free and clear, all bills paid, in place of their stock, and to see that Dr. Seeley could, from time to time, purchase to the extent of 10,000 sets of teeth at 45 cents a set, which was below the market price." The date of this interview he gives as September 15th, and he says that on September 16th Dr. Seeley accepted the later proposition "to take the Butterick Painless Dental Company stock, and to get from time to time what teeth he wanted until he had 10,000 sets at a price of 45 cents a set." He also testified that Dr. Seeley "drew two receipts at the hotel, which were

signed, one by himself and wife, and one by me." These are the papers set forth in the opinion by the PRESIDING JUSTICE.

The defendant gave no testimony upon this trial, and has not sought to contradict, limit, or vary his prior statement of the purpose of the contract. Therefore both the plaintiffs and defendant stand upon and acknowledge the same oral contract, made on September 16, 1903, namely, that plaintiffs should transfer their stock in the Dental Supply Company in exchange for the defendant's stock in the Butterick Painless Dental Company and in consideration (in addition thereto) of the privilege given them to buy the quantity of teeth referred to at the price fixed. There is no dispute as to what the terms of the contract were, as the plaintiffs' version thereof is in effect corroborated and admitted by the defendant. Hence the receipt, so far from being any evidence of a contract between them, is not even a memorandum of their agreement, but solely a receipt for the stock transferred in part performance of the contract, and no more. It is thus characterized by defendant himself in his testimony invariably and repeatedly. The words "free and clear," used therein, became pertinent, in view of the defendant's own theory of what the agreement was, and there is nothing in the receipt for the stock as exchanged which either modifies the original agreement or enlarges the paper from a receipt to a contract. I am therefore of the opinion that the written paper, being solely a receipt given upon part performance of the contract and not a memorandum of the contract itself, had no bearing whatever upon the existence of the oral contract concededly made between the parties, and as to which both sides are in substantial accord.

Upon the bar of the statute of limitations to the cause of action, it may be said that there was no time fixed within which the plaintiffs should exercise their privilege, and therefore it should have been exercised, as a matter of law, within a reasonable time. The court below has found:

"Seventh. That the exercise by the plaintiffs of their said option and the demands made by them as aforesaid were made by the plaintiffs within a reasonable time from the making of the said agreement."

There is no testimony whatever in the case which justifies any other finding save that made by the trial court. The plaintiffs did exercise the privilege which the defendant admits he gave them by calling for sets of teeth as they required them between September 16, 1903, and May 11, 1909, until 2,170 sets had been delivered at the agreed price of 45 cents for each set. When they demanded the balance of the sets and tendered the cash therefor, the refusal was not based upon the ground that they had unreasonably delayed in exercising the privilege, but only on the ground that the price of teeth had gone up and that therefore the makers could not afford to deliver the teeth at the price fixed by the option. In the absence of any proof that the plaintiffs had unreasonably delayed in exercising their option or that the price of the teeth had appreciably increased in the interval, I think that the statute did not commence to run until the date of the final demand and tender, namely, April 23, 1912.

For these reasons I believe the judgment should be affirmed, with costs.

CLARKE, J., concurs.