EDGAR A. LEVY LEASING COMPANY, INC., Appellant, *v.* JEROME SIEGEL, Respondent.

*Landlord and tenant — action for rent — defense that rent was unjust and unreasonable — constitutionality of chapter 944 of Laws of 1920.*

*Levy Leasing Co., Inc., v. Siegel,* 194 App. Div. 482, affirmed.

(Argued January 19, 1921; decided March 8, 1921.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered December 24, 1920, which affirmed an order of Special Term denying a motion by plaintiff for judgment upon the pleadings in an action for rent.

The answer sets up two affirmative defenses: (1) That defendant executed the lease sued on under duress, and (2) that the rent reserved under the renewal lease is unjust, unreasonable and oppressive, the latter defense being predicated on chapter 944 of the Laws of 1920.

The following questions were certified: *First.* Is the first alleged affirmative defense pleaded in said answer sufficient in law on the face thereof? *Second.* Is the second alleged affirmative defense set forth in the answer sufficient in law upon the face thereof? *Third.* Is chapter 944 of the Laws of 1920 a constitutional act? *Fourth.* Does chapter 944 of the Laws of 1920 deprive the plaintiff of his liberty or property without due process of law, in violation of article 1, section 6, of the New York Constitution, and section 1 of the Fourteenth Amendment of the Constitution of the United States? *Fifth.* Does chapter 944 of the Laws of 1920 constitute the taking of private property belonging to the plaintiff for private use without just compensation, in violation of article 1, section 6, of the New York Constitution? *Sixth.* Does chapter 944 of the Laws of 1920 deny to the plaintiff the equal protection of the law, in violation of the Fourteenth Amendment of the Constitution of the United States? *Seventh.* Does chapter 944 of the Laws of 1920 impair the obligation of the contract between the plaintiff and the defendant, in violation of article 1, section 10, of the Constitution of the United States?

*Louis Marshall* and *Lewis M. Isaacs* for appellant.

*Alfred L. Rose* and *Benjamin G. Paskus* for respondent.

*Francis M. Scott, I. Maurice Wormser* and *Julius H. Zieser* for Real Estate Investors of New York, Inc., *amici curiœ.*

*Joseph J. Schwartz* and *A. H. Spigelgass* for Kings County Taxpayers Association, *amici curiœ.*

Order affirmed, with costs, on opinion of POUND, J., in *People ex rel. Durham Realty Corp.* v. *La Fetra* (230 N. Y. 429), and questions certified answered as follows: Nos. 1, 4, 5, 6 and 7 in the negative; Nos. 2 and 3 in the affirmative.

Concur: HISCOCK, Ch. J., HOGAN, CARDOZO, POUND, and ANDREWS, JJ.; CRANE, J., concurs in result on opinion in *Guttag* v. *Shatzkin* (230 N. Y. 647); MC-LAUGHLIN, J., dissents in following opinion:

MCLAUGHLIN, J. (dissenting). The complaint in this action alleged, in substance, that on the 26th of June, 1918, the plaintiff, a domestic corporation, leased to the defendant an apartment in the city of New York for a period of two years commencing October 1, 1918, at an annual rental of $1,450, payable in equal monthly installments on the first day of each month; that defendant went into and continued in possession under the lease until the expiration of the term therein provided; that on the 3d of May, 1920, the parties entered into a written agreement, renewing the lease for a further term of two years from the 1st of October, 1920, at an annual rental of $2,160, payable in equal monthly installments on the first day of each month; that defendant neglected and refused to pay the rent falling due on the 1st of October, 1920, amounting to $180, which sum was due and owing the plaintiff, and for which judgment was demanded.

The answer admitted all the allegations of the complaint, except that the amount of rent was due and payable, which was denied. This denial did not raise an issue, since it was a mere legal conclusion. The answer then set up two affirmative defenses: *First*, that

the parties executed the lease and renewal as mentioned in the complaint; that prior to the execution of the renewal, plaintiff, with intent to coerce defendant into signing the same, stated in words or substance that unless he did so at the increased rental it would terminate his tenancy at the end of the then leased term, and he would be obliged to move; that " defendant believed and relied upon said statement and was fearful that plaintiff would carry out said threat * * * and that defendant would be unable to secure any suitable or similar apartment, owing to the scarcity of such apartments; " " that solely by means of such threats and coercion and duress, the plaintiff induced defendant to sign the alleged renewal of lease above mentioned providing for such increased rental; " and that defendant had tendered and offered to pay the rent for the month of October, 1920, to the extent of $120.83, which was the monthly installment paid for said premises for the month of September, 1920.

The second affirmative defense realleged the facts set forth in the first, and in addition thereto alleged that the rent reserved in the instrument purporting to be the renewal lease, and claimed by plaintiff for the month of October, 1920, was " unjust, unreasonable and oppressive."

The judgment demanded was that the alleged renewal lease be " rescinded, vacated and set aside " and that the complaint be dismissed.

After issue had been joined, plaintiff moved, under section 547 of the Code of Civil Procedure, for judgment on the pleadings. The motion was denied, an appeal taken to the Appellate Division, where the order was affirmed, two of the justices dissenting, and leave given to appeal to this court, certifying certain questions. Two of the questions certified were whether the affirmative defenses constituted a defense to the plaintiff's claim, and the others whether chapter 944 of the Laws of 1920 were constitutional.

The facts pleaded in the first affirmative defense were insufficient upon the face thereof and in this all the members of the court agree. Such facts do not con-

stitute duress, nor do they show that plaintiff was coerced
into signing the renewal; on the contrary, they show that
defendant voluntarily executed it with full knowledge
of its contents.  He had been told that unless he renewed
the lease at the increased rental he would have to vacate
and surrender the premises at the end of the term under
which he was then in possession.  He states that he
relied upon what plaintiff told him and believed it would
compel him to vacate the premises unless he executed
the renewal.  This is precisely what he agreed to do
when he executed the lease and what the law obligated
him to do.  He does not allege as a fact that he had been
unable to secure another apartment, or that he had
made any effort at all in that direction.  He alleges he
was fearful plaintiff would terminate the lease, cause him
to remove from the premises, and that he would, in that
event, be unable to secure a similar apartment owing to
the scarcity thereof; in other words, this allegation is
based entirely upon what he feared might take place.
There is no allegation that he had, at any time prior to
the commencement of the action, claimed that the renewal
lease was obtained by duress or that he had attempted
to have it rescinded on that account, nor did he offer to
rescind; on the contrary, he continued in possession and
sought to hold the same under the lease which he claims
was obtained by duress.  The defense of duress is predi-
cated on the alleged threat of the landlord to exercise
his lawful right to regain possession of the premises at
the expiration of the term then in force.  It never con-
stitutes duress for a person to threaten to enforce his
legal rights by lawful means.  (*McPherson* v. *Cox*, 86
N. Y. 472; *Dunham* v. *Griswold*, 100 N. Y. 224.)  If
he had been coerced into signing the renewal, he could
rescind for that reason, but in order to do so he had to
surrender possession of the property.  This is the general
rule.  A party cannot rescind while retaining the fruits
of the contract.  In case of real estate he must surrender
possession before he can maintain an action for rescission
of the instrument under which he obtained possession.

(*Schiffer* v. *Dietz*, 83 N. Y. 300; *Tompkins* v. *Hyatt*, 28 N. Y. 347, 353; *Oregon Pacific R. R. Co.* v. *Forrest*, 128 N. Y. 83.)

The second affirmative defense realleges the facts set forth in the first, and then alleges that the rent reserved in the writing purporting to be a renewal lease, and claimed by plaintiff for the month of October, 1920, was " unjust, unreasonable and oppressive." This defense is predicated on chapter 944 of the Laws of 1920. If that be valid, then the defense pleaded is good. If the act be void, it furnishes no defense; in other words, if the act be unconstitutional, it is not a law. " It confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." (*Norton* v. *Shelby County*, 118 U. S. 425, 442.)

Appellant contends the act is unconstitutional in that it impairs the obligation of the contract of lease (Federal Const. art. 1, sec. 10); deprives the plaintiff of its property without due process of law; denies to it the equal protection of the law (Federal Const. Fourteenth Amendment); and takes private property for a private use without compensation. (Const. State of New York, art. 1, sec. 6.)

This act purports to amend, but is really designed to entirely supersede, chapter 136 of the Laws of 1920. It provides that it shall be a defense to an action for rent accruing under an agreement for premises in a city of the first class, or in a city in a county adjoining a city of the first class, occupied for dwelling purposes, that such rent is unjust, unreasonable and the agreement under which the same is sought to be recovered is oppressive. (Sec. 1.) That where the answer contains the defense mentioned in section 1, the plaintiff, within five days thereafter (unless upon good cause shown the time be enlarged), must file with the clerk of the court a verified bill of particulars setting forth certain specified facts, and if he does not, the complaint shall, upon motion of the defendant, be dismissed. (Sec. 2.) That where it

appears that the rent has been increased over the rent as it existed one year prior to the agreement under which the rent is sought to be recovered, such agreement shall be presumptively unjust, unreasonable and oppressive. (Sec. 3.)   That the plaintiff may plead and prove in such action a fair and reasonable rent for the premises and recover judgment therefor.   (Sec. 4.)   That if the plaintiff recover judgment by default it shall contain a provision that if the same be not fully satisfied within five days after entry and service upon the defendant of a copy thereof, plaintiff shall be entitled to the premises and a warrant may be issued to put him in possession. (Sec. 5.)   That in such action, if the defendant raise the issue of fairness and reasonableness of the amount of rent demanded, he must, at the time of answering, deposit with the clerk of the court such sum as equals the amount paid as rent during the preceding month or such as is reserved as the monthly rent in the agreement under which he obtained possession.   (Sec. 6.)   That if judgment be taken by default, the court may, under certain conditions, open such default, vacate the judgment and grant a new trial.   (Sec. 7.)   That if defendant appeals from the judgment he shall, pending the appeal, deposit with the clerk of the court the amount of the judgment and thereafter, monthly, until the final determination of the appeal, an amount equal to one month's rental, computed on the basis of the judgment.   (Sec. 8.)   That the act shall not apply to a room or rooms in a hotel containing one hundred and twenty-five rooms or more,. or to a lodging or rooming house occupied under a hiring of a week or less.   (Sec. 9.)   That the act shall not apply to a new building in the course of construction at the time the act takes effect, or commenced thereafter, and shall be in force until November 1, 1922.

I agree with the majority of the court that in determining whether or not the act be constitutional, it must be considered in connection with chapters 942 and 947, passed at the same extraordinary session of the legislature. These three acts, with others not here involved, indicate

an intent on the part of the legislature to regulate rents of dwellings until November 1, 1922. Chapter 942 amends certain sections of the Code of Civil Procedure by providing that summary proceedings shall not be maintained by a landlord to recover possession of leased premises until November 1, 1922, unless it be proved that the tenant holding over is objectionable, or the landlord wants to occupy the premises for a dwelling for himself or family, or intends to demolish the building for the purpose of building a new one, or has sold it to a co-operative ownership corporation. Chapter 947 also amends certain sections of the Code of Civil Procedure by prohibiting a landlord from obtaining, during the same period, possession of his premises by an action of ejectment, except in the cases specified in chapter 942. The purpose of chapter 944, when thus read and considered, was to make tenants in possession a preferred class until November 1, 1922, by denying to the landlord, until that time, the aid of the courts to obtain possession of the premises leased, where the tenant's lease had terminated or he had defaulted in the payment of rent, providing he were willing to pay a reasonable rent, to be determined in a judicial proceeding.

This brings us to the determination of the fundamental question already suggested: Is chapter 944, as applied to leases made prior to its passage, unconstitutional? I am of the opinion that it is. *First*, it impairs the obligation of a contract, and is thus directly in conflict with the Federal Constitution. (Art. 1, sec. 10.) The defendant, several months prior to the passage of the act, freely, deliberately, and with full knowledge of what he was doing, entered into the renewal lease. But he can violate the agreement, because, according to the act, it is, presumptively, unjust, unreasonable and oppressive. The landlord, however, is bound. He cannot get possession of his property and must accept what the court finds to be the fair rental value. It is the substitution of a new contract which the parties never made, and to the terms of which they never agreed. Such

substitution not only impairs the obligation of the contract of renewal, but destroys it, and, therefore, comes within the constitutional prohibition. (*Edwards* v. *Kearzey,* 96 U. S. 595; *Effinger* v. *Kenney,* 115 U. S. 566; *Barnitz* v. *Beverly,* 163 U. S. 118; *Bradley* v. *Lightcap,* 195 U. S. 24.) But it is suggested that the contract of renewal was entered into subsequent to the passage of chapter 136 of the Laws of 1920, which chapter 944 of the Laws of 1920 purports to amend. The answer to this suggestion has already been given. What purported to be an amendment, in fact operated if not as a repeal then certainly as the substitution of one statute for the other. The two acts, when examined, will show a well-defined legislative intent to eliminate chapter 136 by substituting in its place chapter 944.

*Second.* It deprives the plaintiff of its property without due process of law and denies to it the equal protection of the law. It binds the landlord to give to each tenant in possession when the act took effect the right to occupy the premises for at least two years if he so desires, but imposes no obligation to do so. The landlord must permit him to remain, while he is at liberty to depart whenever he sees fit. Not only this, but the landlord is compelled to take the rent which the court fixes as reasonable. This he must accept whether satisfied or not, and if not satisfied, then he is denied the right to regain possession of his property. The tenant, if dissatisfied with the amount fixed, may refuse to pay, and without notice quit and surrender the premises. If this does not amount to depriving a landlord of his property without due process of law, it is difficult to imagine what would. (*People ex rel. Herrick* v. *Smith,* 21 N. Y. 595; *Matter of Tuthill,* 163 N. Y. 133.) In determining what is due process of law, regard must be had to substance and not to form. (*Chicago, B. & Q. R. R. Co.* v. *Chicago,* 166 U. S. 226, 235.) The protection of property involves the protection of its value. (*Southern Ry. Co.* v. *Greene,* 216 U. S. 400; *Ames* v. *Union Pacific Ry. Co.,* 64 Fed. Rep. 165.) It is not difficult to see how the value of prop-

erty occupied by tenants, when the act went into effect, might be very materially impaired or reduced. There is no way in which the landlord can obtain possession for upwards of two years. Indeed, he cannot sell it if required to give immediate possession.

The landlord is also denied the equal protection of the law. He must accept the fair rental value, irrespective of what the tenant has agreed to pay, while the owner of a building in process of construction, or one constructed after the passage of the act, may exact whatever rent he sees fit. The act, therefore, is not uniform upon the same class of persons. One class is compelled arbitrarily to retain tenants whether desired or not, and to accept what the court fixes as a fair rental, while the other class may select its tenants and fix the rent at an amount upon which the parties agree. It is perfectly obvious that under the provisions of the act one who becomes a tenant after its passage might, and probably would, pay substantially more than a tenant in possession of like property in the same locality, and surrounded by the same conditions. The act was not intended to be uniform in its operations. It affected property leased when it took effect in one way, and property not then ready to be leased in another. One class was to be benefited at the expense of the other. (*Willson* v. *McDonnell*, 265 Fed. Rep. 432.)

*Third*. It takes private property for a private use. The plaintiff and defendant are private citizens, engaged in a private business. The renting of property can no more be said to be for a public use in the city of New York than can the sale of food, clothing or any other article. Of course the landlord is a " vendor of space." The baker is a vendor of bread; the butcher is a vendor of meat; the tailor is a vendor of clothes; indeed, every person who sells any kind of property is a vendor of the article sold; all are engaged in a private enterprise. But this does not give the state the right to fix the price at which the sale shall be made, unless it be for the public health, public morals, or the general welfare. If it does,

there is little if anything left of the constitutional provisions relating to the protection of property and the right to contract with reference to it. The power to fix rental rates between private individuals is not analogous to nor controlled by the decisions which have upheld the power of the legislature to fix rates for service where the owner has devoted the business affected to a public use.

In *Munn* v. *Illinois* (94 U. S. 113), chiefly relied upon by the respondent, the owner of a grain elevator had for years devoted it to a public use in handling grain for the public generally. The same principle is applied in *German Alliance Insurance Co.* v. *Lewis* (233 U. S. 389); *Union Dry Goods Co.* v. *Georgia Public Service Corp.* (248 U. S. 372); *Producers Transportation Co.* v. *Railroad Commission* (251 U. S. 228) and other authorities cited by respondent's counsel. The renting of property for housing purposes in the city of New York, as I have already said, is a private business and cannot be made public or impressed with a public interest merely by legislative fiat. Such interest cannot be created in this way or property rights be divested under the guise or pretense of the exercise of the police power. In *Producers Transportation Co.* v. *Railroad Commission (supra)* Mr. Justice VAN DEVANTER, speaking for the court, said: " It is, of course, true that if the pipe line was constructed· solely to carry oil for particular producers under strictly private contracts and never was devoted by its owner to public use, that is, to carrying for the public, the State could not by mere legislative fiat or by any regulating order of a commission convert it into a public utility or make its owner a common carrier; for that would be taking private property for public use without just compensation, which no State can do consistently with the due process of law clause of the Fourteenth Amendment." (p. 230.)

The police power is not superior to the Constitution; on the contrary, it is subject to applicable constitutional limitations. (*Hamilton* v. *Kentucky Distilleries & Warehouse Co.*, 251 U. S. 146.)

In *Matter of Jacobs* (98 N. Y. 98, 108) this court, referring to this power, said: "The limit of the power cannot be accurately defined, and the courts have not been able or willing definitely to circumscribe it. But the power, however broad and extensive, is not above the Constitution. When it speaks, its voice must be heeded. It furnishes the supreme law, the guide for the conduct of legislators, judges and private persons, and so far as it imposes restraints, the police power must be exercised in subordination thereto." (See, also, *Slaughter-house Cases*, 16 Wall. 36, 87.)

The statutes regulating interest are not analogous. No one would contend that the legislature would have power to pass a statute reducing the rate of interest on outstanding obligations. When interest was reduced from seven to six per cent, the statute was silent as to whether it applied to obligations outstanding at the time of its passage, but the courts held it did not apply to such contracts.

The statutes are not analogous in another respect, because there is no statute which compels a person to loan money unless he so desires. The statutes under consideration compel the leasing of property without the consent of the landlord and upon terms which the court itself determines. They are in many respects like the provisions of the act of Congress known as the "Ball Rent Law," for the relief of tenants in the District of Columbia. This act was declared unconstitutional by the Court of Appeals of the District of Columbia. (*Hirsh v. Block*, 267 Fed. Rep. 614.)

In the recent case of *Stell* v. *Mayor, etc., of Jersey City*, decided by the Supreme Court of New Jersey, and reported in 111 Atlantic Reporter, 274 (No. 6 Advance Sheets), a resolution of a municipal corporation, providing that city money should be advanced to defend proceedings to dispossess tenants, was held illegal and void. Justice SWAYZE, speaking for the court, said: "It is enough to say that any authority of the city government to protect property certainly cannot include authority to deprive

owners of property of the beneficial use thereof. The general welfare and good government of the city requires that the city should see that so far as it is concerned all of the citizens are secured their rights, and it is a manifest perversion of the very object of the statute to use the power and money of the municipality for the protection of one class of citizens at the expense of another. No doubt it is desirable that there should be houses for all citizens, but they cannot be provided legally by using, without leave, or confiscating the property of house owners. Housing can only be provided either in the ordinary commercial way, or by private charity."

I am also of the opinion that the statute is uncon-. stitutional in so far as it attempts to confer upon the Municipal Court equitable jurisdiction. Article 6, section 18 of the State Constitution provides: " The Legislature shall not hereafter confer upon any inferior or local court of its creation, any equity jurisdiction or any greater jurisdiction in other respects than is conferred upon County Courts by or under this article." This inhibition is not confined to local or inferior courts created after the adoption of the present Constitution. It is equally applicable to those theretofore created. (*Lewkowicz* v. *Queen Aeroplane Co.*, 207 N. Y. 290.) The Municipal Court of the city of New York is a continuation of the old District Court. (*Worthington* v. *London Guarantee & Accident Co.*, 164 N. Y. 81.) It is a local court of legislative creation. While it is true that it has jurisdiction of equitable defenses to the extent of defeating a plaintiff's claim, it is nevertheless true that such defense must be a defense, pure and simple, and the test is the relief asked. This act clothes the Municipal Court (in which a large percentage of the rent cases is brought) with equitable powers. It may, in effect, proceed to vacate and set aside the lease under which a tenant is in possession and then determine what is a fair rental, and having ascertained that fact, enter judgment accordingly. This is the exercise of equitable powers. (*Simon* v. *Schmitt*, 137 App. Div. 625.)

A statute ought not to be pronounced unconstitutional unless it clearly appears to be so. This, to me, does so appear. All citizens should have houses in which to live, but if there are not enough for all that is no reason why those who are in should be kept there and those who are out should be allowed to care and shift for themselves. The state has the same regard for one class as the other. Nor should one landlord be treated differently from another. All in the same class should be treated alike. This is what the State and Federal Constitutions require. These safeguards cannot be overthrown by the exercise of the police power, a power which no one has as yet attempted accurately to define or state just where it commences or ends. It seems to me much better to adhere strictly to the Constitution, the anchor of good, safe and sound government, rather than to embark on the sea of paternalism, the dangers of which cannot be foreseen or the perils foretold.

Entertaining the views above expressed I dissent, vote to reverse the orders of the Appellate Division and Special Term, and grant the motion for judgment on the pleadings.