JAARDA v. VAN OMMEN.

1. JUDGMENT—FORECLOSURE—MORTGAGES—INSURANCE MONEYS.
    Decree in suit brought to foreclose purchase-money mortgage
    *held*, in effect, dismissal of bill where proceeds of insurance
    company's check for fire loss, occurring after mortgagors'
    default, was applied to payment of past-due interest, costs of
    suit and small amount toward principal sum of mortgage
    which had all been declared due pursuant to acceleration
    clause.

2. MORTGAGES—MORATORIUM STATUTE.
    Emergency mortgage moratorium act has no application to case
    where it was not invoked by mortgagors nor followed by trial
    court (Act No. 98, Pub. Acts 1933).

3. SAME—DECREE—FORECLOSURE—ACCELERATION CLAUSE.
    Mortgagee *held*, entitled to decree of foreclosure of purchase-
    money mortgage containing acceleration clause for default of
    interest payments where right of acceleration had been duly
    exercised.

4. SAME—DEFAULT—RELIEF FROM ACCELERATION CLAUSE.
    Mortgagor may be relieved from effect of operative acceleration
    clause when default upon which it was exercised is due to
    mortgagee's unconscionable or inequitable conduct.

Appeal from Ottawa; Miles (Fred T.), J. Sub-
mitted October 5, 1933. (Docket No. 78, Calendar
No. 37,404.) Decided February 1, 1934.

Bill by Gerrit Jaarda against Bert Van Ommen
and wife and Farmers Mutual Fire Insurance Com-
pany of Ottawa and Allegan Counties, to foreclose
a mortgage and for other relief. From decree deny-
ing foreclosure, plaintiff appeals. Remanded, and
decree of foreclosure ordered entered.

*Diekema, Cross & Ten Cate,* for plaintiff.

Wiest, J.   March 28, 1930, defendants Van Ommen, herein referred to as defendants, gave plaintiff a purchase-money mortgage for $2,300, due in 10 years, interest payable semi-annually, with an acceleration clause, operative upon default of interest payments.  Defendants also agreed to pay all taxes and assessments levied upon the property and to keep the buildings erected thereon insured.  An insurance policy was issued to defendant Bert Van Ommen, with loss, if any, payable to plaintiff as his mortgage interest might appear.  Defendants did not pay interest upon the mortgage, nor the taxes upon the property, and plaintiff exercised the right of election under the acceleration clause and declared the full amount of the mortgage due.  A barn upon the premises burned in July, 1932, and the insurance company issued a check for the loss, payable to the order of plaintiff and Bert Van Ommen. Mr. Van Ommen refused to indorse the check and plaintiff has not received the money thereon.  August 17, 1932, plaintiff filed the bill herein for foreclosure of the mortgage.  Defendants, by answer, admitted default in payment of interest and taxes and, by cross-bill, alleged fraudulent inducement in procuring the mortgage and asked for cancellation.

Defendants were in default and, under the terms of the mortgage, full payment thereof was at the election of plaintiff accelerated and made due. Plaintiff exercised the right agreed upon and thereby definitely fixed the rights of the parties.  Thereafter neither defendants nor the court could fix the rights of plaintiff otherwise.  Defendants made no proof in support of their cross-bill and it was dismissed and no appeal taken.

Defendants, during pendency of the suit, paid $170.75, being the taxes for 1930, 1931 and 1932, and

the insurance premium paid by the plaintiff, with interest thereon to the date of payment. Defendants never paid any interest on the mortgage principal and there was due at the time of hearing for such item the sum of $434.70.

Upon settlement of the decree plaintiff testified:

"I have not received the cash on that check for the fire loss on the farm. I asked them this morning and he says he don't know if he can pay me the money in cash. That's what he told me this morning. That's what the insurance agent told me, the secretary of the insurance company. The Zeeland bank on which the check is drawn is not paying out cash. I didn't get any money at all. I went to the secretary of the insurance company, and asked for a new check and asked for the money, and he told me he couldn't pay. They didn't have no money on hand. They couldn't pay it. The secretary of the insurance company says, I will give you a note."

The court decreed:

"That the said defendant insurance company, upon surrender of said check, issue another check for the said sum of $560 payable to plaintiff alone and that the same, when paid, shall be satisfaction in full of the liability of said defendant insurance company on account of said fire loss, and that the said sum of $560, when paid, be applied by plaintiff as follows: $434.70 on interest here now found to be due on said note and mortgage, $65.50 on plaintiff's costs of suit, hereby allowed to plaintiff, and $59.70 on the principal sum of said note and mortgage."

The decree did not, in terms, dismiss plaintiff's bill but, in effect, it was a dismissal and must be so considered. The court evidently entertained the view that Act No. 98, Pub. Acts 1933, commonly

known as the moratorium act, authorized disposal of the case in the manner mentioned. The mentioned statute has no application for it was not invoked by defendants; neither were any of its provisions followed by the court and, therefore, its constitutionality is not here involved. Plaintiff's right to foreclose cannot be sidetracked in the manner attempted. The inability of plaintiff to obtain payment of the insurance from the company we have mentioned, but find it unnecessary to accord the fact more than passing notice. Plaintiff is entitled to a decree according him the rights contracted for in the mortgage, and operative by default of defendants and such rights before the court commanded a decree of foreclosure, and the action had was an unwarranted closing of the court to plaintiff.

This court has held that the court of equity has power to relieve the mortgagor from the effect of an operative acceleration clause when the default upon which the acceleration election is exercised is the result of some unconscionable or inequitable conduct of the mortgagee. *Wilcox* v. *Allen,* 36 Mich. 160; *Zlotoecizski* v. *Smith,* 117 Mich. 202; *Rathje* v. *Siegel,* 243 Mich. 376. Nothing of such a nature is present in the case at bar. The default of defendants and the election of plaintiff made the full amount of the mortgage due and the court could not decree otherwise.

In *Graf* v. *Hope Building Corp.,* 254 N. Y. 1 (171 N. E. 884, 70 A. L. R. 984), right of election, under an acceleration covenant, was exercised, followed by tender of the payment in default, and the court employed the following language pertinent to the instant case:

"Plaintiffs may be ungenerous, but generosity is a voluntary attribute and cannot be enforced even

by a chancellor. Forbearance is a quality which under the circumstances of this case is likewise free from coercion. Here there is no penalty, no forfeiture (*Ferris* v. *Ferris,* 28 Barb. [N. Y.] 29; *Noyes* v. *Anderson,* 124 N. Y. 175, 180 [26 N. E. 316, 317, 21 Am. St. Rep. 657]), nothing except a covenant fair on its face to which both parties willingly consented. It is neither oppressive nor unconscionable (*Valentine* v. *Van Wagner,* 37 Barb. [N. Y.] 60). In the absence of some act by the mortgagee which a court of equity would be justified in considering unconscionable, he is entitled to the benefit of the covenant. The contract is definite and no reason appears for its reformation by the courts (*Abrams* v. *Thompson,* 251 N. Y. 79, 86 [167 N. E. 178]). We are not at liberty to revise while professing to construe (*Sun P. & P. Ass'n* v. *Remington P. & P. Co.,* 235 N. Y. 338, 346 [139 N. E. 470]). Defendant's mishap, caused by a succession of its errors and negligent omissions, is not of the nature requiring relief from its default. Rejection of plaintiffs' legal right could rest only on compassion for defendant's negligence. Such a tender emotion must be exerted, if at all, by the parties rather than by the court. Our guide must be the precedents prevailing since courts of equity were established in this State. Stability of contract obligations must not be undermined by judicial sympathy."

The case is remanded to the circuit court with direction to enter decree of foreclosure.

Plaintiff will recover costs.

POTTER, SHARPE, NORTH, FEAD, and BUTZEL, JJ., concurred with WIEST, J. McDONALD, C. J., took no part in this decision.

The following opinion was written and signed by Mr. Justice WEADOCK while a member of this court. At his request it is published herewith.

WEADOCK, J. On March 28, 1930, defendants (Van Ommen) purchased a farm from plaintiff for the sum of $4,300 and made a down payment of $2,000 in cash, giving a promissory note secured by first mortgage for $2,300, to become due March 28, 1940, the mortgage providing that the whole amount of principal shall become due forthwith if the interest remains unpaid for 30 days.

Defendants never paid any interest and after five instalments remained unpaid for more than 30 days, plaintiff instituted foreclosure proceedings. Defendants never paid any taxes and the plaintiff paid them for three years.

It was provided further in the mortgage that the defendants were to keep the buildings on the farm insured against loss by fire and assign the policy and certificates to the plaintiff and that in the event of failure to comply with this provision the principal should become due at the option of the mortgagee. Defendants did procure insurance on the property in their name with a loss clause payable to the plaintiff as his interest might appear but failed to have the policies assigned to plaintiff.

On July 6, 1932, the barn burned and the insurance company issued a check for $560 payable to plaintiff and defendant Bert Van Ommen. Van Ommen refused to sign the check and later the bank upon which it was drawn closed and was placed in the hands of a conservator and the check remains unpaid.

The court refused to grant a decree of foreclosure on the grounds that an emergency exists and that the Michigan legislature had passed Act No. 98, Pub. Acts 1933, empowering courts to continue actions for the foreclosure of real estate mortgages until not later than March 1, 1935. The court or-

dered the defendants to pay the taxes and the premium on a policy of insurance taken out by plaintiff after foreclosure proceedings were started, within 60 days. The defendants paid this amount and the court ordered the defendant insurance company to issue another check for $560 to plaintiff, the same to be applied on back interest payments, plaintiff's costs of suit and the balance on the principal. Plaintiff went to the insurance company and was told by the secretary that they could not pay the claim in cash but would give a note for the amount due.

Defendants in their cross-bill claimed misrepresentation upon the sale of the farm and asked that the mortgage be cancelled and the farm deeded to them free and clear of the mortgage. The court found no proof of misrepresentation and dismissed the cross-bill. Plaintiff appeals.

There is a brief for appellant but none for appellee. The real question in the case is whether the act referred to is constitutional, because it violates the obligation of contracts, contrary to article 1, § 10 of the Constitution of the United States which provides that "no State shall * * * pass any * * * law impairing the obligation of contracts."

The Constitution of Michigan of 1908, article 2, § 9,—"No * * * law impairing the obligation of contracts shall be passed." As the remedy for enforcing contracts provided by law is a part of the contract it may be conceded at the outset that the act complained of does impair the obligation of contracts.

The sovereignty of the United States and of the State of Michigan which is sovereign in all matters not delegated to the United States in the Constitution may exercise its police power notwithstanding the Constitution and under that power, Act No. 98,

Pub. Acts 1933, is a valid law and the action of the circuit court in obeying it should be affirmed.

The act provides that an emergency exists in the general credit situation in this State requiring special temporary legislation under the police powers of the State.

In the case of *New State Ice Co.* v. *Liebmann,* 285 U. S. 262, 306 (52 Sup. Ct. 371), the words of Justice Brandeis in his dissenting opinion, in which Justice Stone joined, are applicable in this case:

"The people of the United States are now confronted with an emergency more serious than war. Misery is widespread, in a time, not of scarcity, but of overabundance. The long-continued depression has brought unprecedented unemployment, a catastrophic fall in commodity prices and a volume of economic losses which threatens our financial institutions. Some people believe that the existing conditions threaten even the stability of the capitalistic system. Economists are searching for the causes of this disorder and are re-examining the bases of our industrial structure. Business men are seeking possible remedies. Most of them realize that failure to distribute widely the profits of industry has been a prime cause of our present plight."

The existence of this power is not a new question in this State. *People* v. *Hawley,* 3 Mich. 330. This case was followed by this court in *Teithmiller* v. *People,* 44 Mich. 280, 285, in a unanimous opinion by Justices COOLEY, CAMPBELL, GRAVES and MARSTON. The later cases also sustain it. *Bolden* v. *Grand Rapids Operating Corp.,* 239 Mich. 318 (53 A. L. R. 183).

All rights are subject to the police power. *Kelley* v. *Judge of Recorders Court,* 239 Mich. 204 (53 A. L. R. 273). The case of *Detroit Trust Co.* v.

*Lipsitz,* 264 Mich. 404, only held that the law of 1925 relating to rents did not apply to mortgages made prior to that date.

Minnesota has enacted a statute similar to the Michigan statute in question, chapter 339 of the Laws of 1933, and it has been sustained by the Supreme Court of Minnesota in the case of *Blaisdell* v. *Home Building & Loan Association,* 189 Minn. 422 (249 N. W. 334, 86 A. L. R. 1507). That court said on page (N. W.) 334 (syllabi):

"Appellants concede as they must that chapter 339, Laws 1933, under which the time for redemption from mortgage foreclosure sales may be extended, impairs the obligation of the mortgage contract.

"The existence of the economic emergency justified the legislature in the exercise of the police power of the State to enact the law to relieve from the emergency.

"Whether the emergency existed and was of such nature that resort might be had to the police power of the State was primarily for the legislature, but though the courts have authority to determine whether such emergency in fact exists, common knowledge of conditions and the action of the President and the congress indicate a reasonable basis for legislative action.

"The law goes no farther than reasonably necessary in granting relief under the existing conditions."

Blaisdell petitioned the trial court for an order staying foreclosure of a mortgage pursuant to the emergency act which the trial court denied and he appealed to the Supreme Court of Minnesota which reversed the order and an appeal was taken to the Supreme Court of the United States, was advanced for hearing and set for Nov. 6, 1933, and was argued there on November 8th and 9th.

The Minnesota law in question is so like the Michigan statute that extended quotations will be made from the opinion of the supreme court in the Minnesota case.

"Appellants presented a petition to the district court for an order extending the period of redemption under the provisions of c. 339, Laws 1933. The substance of the petition was that appellants owned a certain lot in Minneapolis, which was their homestead and of the reasonable value of $15,000; that appellants on May 1, 1931, executed and delivered their mortgage to respondent on said lot to secure the payment of a certain sum of money, which mortgage contained a valid power of sale by advertisement; that thereafter by reason of circumstances beyond the control of appellants default in the condition of the mortgage was made, and it was foreclosed by advertisement, and sold to respondent on May 2, 1932, for $3,700.98; that the time of redemption will expire on May 2, 1933, and that respondent is the owner and holder of the sheriff's certificate of sale on the foreclosure; that appellants have made earnest efforts to refinance the loan and redeem, but have failed because of the economic depression that has existed throughout the State for the last three years, and that unless the period of redemption be extended the property will be irretrievably lost to appellants; that the reasonable net income in normal times is $115 per month, and that for the last year it has been only $37 per month; that the reasonable value of the property greatly exceeds the money due on the mortgage; that unless the time to redeem from the said sale be extended, appellants will suffer the loss of their whole equitable interest in the property; and appellants prayed that the court grant a hearing to extend the period of redemption until May 1, 1935, that it determine the reasonable rental value of the property, and directing and requiring appellants to pay all or such reasonable part of such

rental value toward the payments of taxes, insurance and interest on the mortgage indebtedness as to the court appears reasonable and just. On the hearing respondent objected to the introduction of any evidence on the ground that chap. 339, Laws 1933, was unconstitutional in that it impaired the obligation of the mortgage contract, that it was special and class legislation, and not warranted under the police power of the State. The objection was sustained, and appellants' motion for a new trial being denied, they appealed.

"It is declared to be an emergency measure, and is not to remain in operation beyond May 1, 1935. Its object is to authorize the district court to extend the time of redemption from mortgage foreclosure sales and execution sales of real estate, and incidentally thereto, to withhold during that time the power of sale by advertisement, and the right to deficiency judgments. That this is impairing the obligation of the mortgage contract and the rights of judgment creditors is settled by the following decisions: *Heyward* v. *Judd,* 4 Minn. 483; *Goenen* v. *Schroeder,* 8 Minn. 387; *Carroll* v. *Rossiter,* 10 Minn. 174; *Hillebert* v. *Porter,* 28 Minn. 496 (11 N. W. 84); *O'Brien* v. *Krenz,* 36 Minn. 136 (30 N. W. 458); *Dunn* v. *Stevens,* 62 Minn. 380 (64 N. W. 924, 65 N. W. 348); *Bronson* v. *Kinzie,* 1 How. (42 U. S.) 311; *Edwards* v. *Kearzey,* 96 U. S. 595; *Barnitz* v. *Beverly,* 163 U. S. 118 (16 Sup. Ct. 1042).

"The only ground upon which chap. 339, Laws 1933, can be sustained is that it is legislation in virtue of the police power of the State called into exercise because of 'the public economic emergency' which the act declares exists in the State. Respondent concedes that under the police power the State may impair the obligations of contract. Courts have so held. *State, ex rel. Twin City B. & I. Co.,* v. *Houghton,* 144 Minn. 1 (174 N. W. 885, 176 N. W. 159, 8 A. L. R. 585); *State, ex rel. Beery,* v. *Houghton,* 164 Minn. 146 (204 N. W. 569, 54 A. L. R. 1012);

*Sligh* v. *Kirkwood,* 237 U. S. 52 (35 Sup. Ct. 501);
*Price* v. *Illinois,* 238 U. S. 446 (35 Sup. Ct. 892);
*Perley* v. *North Carolina,* 249 U. S. 510 (39 Sup. Ct.
357); *Miller* v. *Schoene,* 276 U. S. 272 (48 Sup. Ct.
246). In *Sligh* v. *Kirkwood, supra,* we find the fol-
lowing: 'The police power, in its broadest sense,
includes all legislation and almost every function
of civil government. *Barbier* v. *Connolly,* 113 U. S.
27 (5 Sup. Ct. 357). It is not subject to definite limi-
tations, but is co-extensive with the necessities of
the case and the safeguards of public interest. *Cam-
field* v. *United States,* 167 U. S. 518, 524 (17 Sup. Ct.
864). It embraces regulation so designed to pro-
mote public convenience or the general prosperity
or welfare as well as those specifically intended to
promote the public safety or the public health.' To
what extent emergency legislation under the police
power of the State may impair contract obligations
or impinge on any constitutional provision, has re-
ceived exhaustive considerations in cases arising
out of the so-called housing legislation in New York
and in the District of Columbia. On all questions
involved and decided therein the similarity or occa-
sion for the emergency legislation and its effect in
impairing the obligations of contract, and in violat-
ing the due process clause are so pointedly ap-
plicable here that we feel they should be followed.
The opinion of Judge Pound in *People* v. *LaFetra,*
230 N. Y. 429 (130 N. E. 601, 16 A. L. R. 152), and
the concurring opinion of Judge Crane, expressed
in *Guttag* v. *Shatzkin,* 230 N. Y. 647 (130 N. E. 929),
go quite fully into every legal proposition now
raised. *Edgar A. Levy Leasing Co.* v. *Siegel,* 230
N. Y. 634 (130 N. E. 923), decided on the opinion in
the *LaFetra Case,* was affirmed in 258 U. S. 242
(42 Sup. Ct. 289). We quote from Judge Pound's
opinion the principles controlling in a case of this
sort: 'Whether or not a public emergency existed
was a question of fact, debated and debatable, which
addressed itself primarily to the legislature. That

it existed, promised not to be presently self-curative, and called for action, appeared from public documents and from common knowledge and observation. If the lawmaking power on such evidence has determined the existence of the emergency and has in the main dealt with it in a manner permitted by the constitutional limitations upon legislative power, so far as the same affect the class of landlords now challenging the statutes, the legislation should be upheld. * * * The proposition is equally fundamental that the State may establish regulations reasonably necessary to secure the general welfare of the community by the exercise of its police power, although the rights of private property are thereby curtailed and freedom of contract is abridged (citing authorities). * * * Emergency laws in time of peace are uncommon but not unknown. Wholesale disaster, financial panic, the aftermath of war (*Hamilton* v. *Kentucky Distilleries & W. Co.*, 251 U. S. 146, 161 [40 Sup. Ct. 106]), earthquake, pestilence, famine, and fire, a combination of men or force of circumstances may, as the alternative of confusion or chaos, demand the enactment of laws that would be thought arbitrary under normal conditions (*Bowditch* v. *Boston*, 101 U. S. 16, 18, 19; *American Land Co.* v. *Zeiss*, 219 U. S. 47 [31 Sup. Ct. 200]). Although emergency cannot become the source of power, and although the Constitution cannot be suspended in any complication of peace or war (*Ex parte Milligan*, 4 Wall. [71 U. S.] 2), an emergency may afford a reason for putting forth a latent governmental power already enjoyed but not previously exercised.' The laws involved in the *LaFetra Case* permitted tenants to retain possession after the expiration of the lease upon paying reasonable rent, and, where a lease has been entered for a fixed rent, upon the tenant's application that the stipulated rent was unreasonable or extortionate he could have the rent reduced. The summary dispossessory remedy was temporarily withdrawn from the landlords.

A somewhat similar housing or renting act was passed by congress for the city of Washington. The act of congress and the New York acts came before the Federal Supreme Court in *Block* v. *Hirsh,* 256 U. S. 135 (41 Sup. Ct. 458, 16 A. L. R. 165), and *Marcus Brown Holding Co.* v. *Feldman,* 256 U. S. 170 (41 Sup. Ct. 465), affirming 269 Fed. 306, and were sustained by a five to four decision. Later cases arising from the same acts are *Edgar A. Levy Leasing Co.* v. *Siegel,* 258 U. S. 242 (42 Sup. Ct. 289), and *Chastleton Corp.* v. *Sinclair,* 264 U. S. 543 (44 Sup. Ct. 405). In the *Siegel Case* the New York housing acts were again under attack on various constitutional grounds, but upheld, there being only three dissenters at that time. The proposition was there pressed that the relation of landlord and tenant 'is a private one and is not so affected by a public interest as to render it subject to regulation by the exercise of the police power.' But the court held the question foreclosed by the *Marcus Brown Holding Co. Case.* Again it was contended that that case did not squarely present whether or not the housing acts impaired contract obligations, but the court in denying this contention, quotes from the *Marcus Brown Holding Co.* decision: 'The chief objections to these acts have been dealt with in *Block* v. *Hirsh.* In the present case more emphasis is laid upon the impairment of the obligation of contract of the lessees to surrender possession and of the new lease which was to have gone into effect upon October 1, last year. But contracts are made subject to the exercise of the police power of the State when otherwise justified, as we have held this to be.' Several cases are cited to support the last proposition. It is, however, true that the dissenting justices deny that the cases sustain what the majority deduce from them. Even though the dissenting opinions in the *Block* and *Marcus Brown Holding Co. Cases* may appear more in harmony with past interpretation of constitutional provisions, this court should follow

the principles established by the prevailing opinions therein. They, and the later cases above cited, hold that in an emergency the legislature under the police power of the State may temporarily withdraw a summary remedy given by statute for the enforcement of contract rights, provided some adequate remedy remains; that in a public emergency statutes may be enacted which impair temporarily the obligations of contract, provided they be such as the emergency reasonably demands and the impairment be no more than is just and equitable under the circumstances; and that whether such an emergency exists as justifies the exercise of the police power is primarily for the legislature to whose judgment courts must give due weight, but the courts do possess the final authority to determine whether the emergency does in fact exist (*Chastleton Corp.* v. *Sinclair, supra*), and whether the legislation for its relief is just and reasonable. *Lawton* v. *Steele,* 152 U. S. 133 (14 Sup. Ct. 499).

''The main proposition upon which this law must rest is the existence of 'a public economic emergency.' * * * As a rule, in times of great economic depression and great depreciation of real estate values, the mortgagee does not desire the land, and rather than take the land, would be glad to grant longer extensions on better terms than the court would be authorized to give under this law. In a great many foreclosure sales and execution sales under the present depreciated values the right of redemption is of no value, and the owner will not use it even if funds were available. And again, it may well be argued that legislation which impairs contract obligations defeats its purpose. It tends to withdraw from the borrower the funds which otherwise he might procure. Lenders will not loan their money in a State where the contract for its repayment may be impaired at the uncontrolled whim of its legislature. But, with these and other objections to the law which may be raised, we reach the con-

clusion that it must be sustained. In addition to the weight to be given the determination of the legislature that an economic emergency exists which demands relief, the court must take notice of other considerations. The members of the legislature come from every community of the State and from all the walks of life. They are familiar with conditions generally in every calling, occupation, profession and business in the State. Not only they, but the courts must be guided by what is common knowledge. It is common knowledge that in the last few years land values have shrunk enormously. Loans made a few years ago upon the basis of the then going values cannot possibly be replaced on the basis of present values. We all know that when this law was enacted the large financial companies, which had made it their business to invest in mortgages, had ceased to do so. No bank would directly or indirectly loan on real estate mortgages. Life insurance companies, large investors in such mortgages, had even declared a moratorium as to the loan provisions of their policy contracts. The president had closed banks temporarily. The congress, in addition to many extraordinary measures looking to the relief of the economic emergency, had passed an act to supply funds whereby mortgagors may be able' within a reasonable time to refinance their mortgages or redeem from sales where the redemption has not expired. With this knowledge the court cannot well hold that the legislature had no basis in fact for the conclusion that an economic emergency existed which called for the exercise of the police power to grant relief.

"But it is claimed that the emergency sought to be relieved by this law is a private matter between mortgagors and mortgagees or between owners of lands and their judgment creditors which is not of public concern, so as to justify the exercise of the State's police power. It is said the housing statutes for the cities of Washington and New York related

to shelter or places to live—a matter involving public health, public morality, and public safety. Yet when those statutes came before the courts it was urged, and with perhaps as good reason as in the instant case, that they related to the private affairs between landlords and tenants in which the public was not interested. So here respondent asserts that whether title to lands pass to the mortgagees at any certain time between now and May 1, 1935, can be of no public concern. The title to lands, it is said, must rest in some one, and public welfare is not dependent upon whether it is in one individual or in another. To us it appears about as much of public concern whether numerous owners of homes and lands—providing the necessary shelter and means of livelihood—must lose them because a temporary unforeseen economic depression prevents a redemption within the time the law or contract permits, as that certain tenants who are in possession shall remain in spite of the terms of the lease because of the temporary scarcity of available quarters. All would-be tenants could not be accommodated, and it would seem that so long as the landlords were willing to let all available room it was none of the public's concern who were accepted as tenants. But the courts found the emergency and its relief one of sufficient public interest to permit the police power of the State to impair the obligation of contracts. It appears to us that the economic emergency which now threatens the loss of homes and lands which furnish those in possession the necessary shelter and means of subsistence is an equally potent cause for the enactment of chapter 339, Laws 1933, under the police power of the State, that the housing emergency was in Washington and New York, which the supreme court of the United States deemed sufficient for the enactment of the relief statutes for those cities. We have not overlooked the fact that Mr. Justice Holmes, who spoke for the majority in *Block v. Hirsh* and *Marcus Brown Holding Co.* v. *Feldman,*

*supra,* in *Pennsylvania Coal Co.* v. *Mahon,* 260 U. S. 393 (43 Sup. Ct. 158, 28 A. L. R. 1321), said that the cases mentioned went 'to the verge' of what was permissible under the constitutional limitations. However, to us no more of public health or public welfare seems involved in the extension of the tenancy to certain tenants then in possession of shelter than in the extension of the occupation of homes, shelter, or means of subsistence to mortgagors and judgment debtors in possession. That the courts may doubt the wisdom of the law is no ground upon which to declare it invalid. It is to be presumed constitutional until the contrary appears beyond a reasonable doubt.''

Since the *Block* and *Feldman Cases* were decided, two of the four dissenting justices have died, Chief Justice White and Justice McKenna.

''It cannot be said that this law goes beyond what is reasonable to give relief in a temporary emergency. At the mortgagor's option the right to foreclose by advertisement may be withheld or rather changed into a foreclosure by action during the operation of the law, that is, up to May 1, 1935. The right to foreclose by action remains intact. The right of redemption may be extended by the district courts to the date mentioned; but to do so the courts must determine the terms upon which such extension may be had, and during that period the rental value of the property must be applied upon the payment of taxes, insurance and the debt. The condition that the mortgagor or the one obtaining the extension to redeem must meanwhile pay the rental value of the property goes far to giving compensation for the extension secured. The relief appears to be no more than what must be regarded as reasonable and just. * * *

''After this cause was submitted, on June 12, 1933, the supreme court of North Dakota filed its

decision in *State, ex rel. Cleveringa,* v. *Klein,* 63 N. D. 514 (249 N. W. 118, 86 A. L. R. 1523), holding the act of that State, extending the time of redemption from real estate mortgage foreclosure sales and real estate execution sales, unconstitutional. The court said that no matter what the emergency might be the bill of rights in their State Constitution prohibited the legislature from enacting any law impairing the obligations of private contract.''

The court of appeals of the State of New York and the supreme court of the United States are regarded as higher authority. The law is general, applying to the whole State. It extends to all mortgage foreclosure sales however conducted until March 1, 1935.

''The temporary economic emergency affecting such mortgagors * * * justified the classification. That the law does not cover every case of owners of property who are affected by the economic depression or emergency, does not condemn it. *State* v. *Elliott,* 135 Minn. 89 (160 N. W. 204); *Miller* v. *Wilson,* 236 U. S. 373 (35 Sup. Ct. 342, L. R. A. 1915 F, 829).
''The order is reversed.'' *Blaisdell* v. *Home Building & Loan Ass'n,* 189 Minn. 422 (249 N. W. 334, 338, 86 A. L. R. 1507).

Wilson, Chief Justice, concurring, said:

''The public is interested in the solvency and prosperity of the people. It follows that it is detrimental to the public interest for our people to lose their valuable lands, improved or unimproved, at a time when the banks are closed and when it is impossible to find anyone who will make a mortgage loan. Funds are simply not available regardless of the security offered. The plight of the landowner has been enhanced because of the depreciation in

land values resulting in many cases of the land being worth less than the mortgage. In such case the mortgagor can have no legislative help. Conditions are abnormal. To this situation the banks, acting under governmental requirements, have contributed by calling for liquidation to strengthen their own reserves.

"As a rule mortgagees want their money, not land. Most of the real estate mortgages existing today were contracted when the general price level was about twice, and the farm values about four times, as high as today. It is estimated that mortgage foreclosures in the last three years aggregate about half a million in number. Farm mortgage debts amount to about nine billion dollars."

The United States supreme court "in *Block* v. *Hirsh*, 256 U. S. 135 (41 Sup. Ct. 458, 16 A. L. R. 165), and *Marcus Brown Holding Co.* v. *Feldman*, 256 U. S. 170 (41 Sup. Ct. 465), established a modern judicial doctrine. * * * There has always been a development in judicial construction to meet new and changing conditions."

As said by Mr. Chief Justice Green in *Hodges* v. *New England Screw Co.*, 1 R. I. 312, 356 (53 Am. Dec. 624), " 'The law is progressive and expansive, adapting itself to the new relations and interests which are constantly springing up in the progress of society.'

"The mortgagee is entitled to some protection during the interim of the extension and this statute gives him that protection. These laws have been enacted in several of the States and while all courts do not agree the modern judicial doctrine seems to sustain such legislation. An interesting and helpful discussion is found in 42 Yale Law Journal, p. 1236.

"In considering what may be done under a statute we must presume that all courts will properly perform their duties.

"Mortgagees have little fear from this particular statute. Few of them would wish to deprive the

mortgagor of an opportunity of getting his property out of a burning house. I insist that the courts can do very little for the mortgagor under this statute. The legislature so intended. * * * Our legislature acted cautiously and yet probably went as far as they could. In my judgment this statute is not a violation but a vindication of our form of constitutional government."

This case was again before the Supreme Court of Minnesota on July 27, 1933, and on appeal from the judgment entered on the finding of fact and conclusions of law, it was held that the first appeal ruled this and it was so held, July 27, 1933, 189 Minn. 422 (249 N. W. 893, 86 A. L. R. 1507).

The New York court of appeals in the case of *People* v. *Nebbia,* 262 N. Y. 259 (186 N. E. 694), decided July 11, 1933, upheld a similar statute of the State of New York dealing with the dairy business, citing the case of *Charles Wolff Packing Co.* v. *Court of Industrial Relations of Kansas,* 262 U. S. 522 (43 Sup. Ct. 630, 27 A. L. R. 1280).

On page 268, 262 N. Y. (186 N. E. 698) the court said:

"We are accustomed to rate regulation in cases of public utilities and other analogous cases and to the extension of such regulative power into similar fields. Rents have been regulated to prevent the exactions of greedy landlords who would contend that their property was taken from them when they were deprived of the right to do what they would with their own. *Block* v. *Hirsh,* 256 U. S. 135 (41 Sup. Ct. 458, 16 A. L. R. 165) ; *Marcus Brown Holding Co.* v. *Feldman,* 256 U. S. 170 (41 Sup. Ct. 465). Compensation has been provided for workmen injured by the necessary risks of their employment, although the common law cast the burden of such risks on the workman. *Arizona Employers' Liability Cases,* 250 U. S. 400 (39 Sup. Ct. 553, 6 A. L.

R. 1537). Preference to citizens in employment of laborers on public works has been upheld. *Heim* v. *McCall*, 239 U. S. 175 (36 Sup. Ct. 78, Ann. Cas. 1917 B, 287). Prevailing rate of wages laws for workmen on municipal contracts have been upheld. *Atkin* v. *Kansas*, 191 U. S. 207 (24 Sup. Ct. 124); *Austin* v. *City of New York*, 258 N. Y. 113 (179 N. E. 313). Usury laws are of an ancient house. Tariffs for the protection of home industries are upheld. Sugar bounties have not been declared unconstitutional. *United States* v. *Realty Co.*, 163 U. S. 427 (16 Sup. Ct. 1120). The rates of grain elevators (*Munn* v. *Illinois*, 94 U. S. 113) and cotton gins may be regulated (*Frost* v. *Corporation Commission of Oklahoma*, 278 U. S. 515 [49 Sup. Ct. 235]). Rate fixing in the business of insurance has been upheld. *German Alliance Insurance Co.* v. *Superintendent of Insurance of Kansas*, 233 U. S. 389 (34 Sup. Ct. 612, L. R. A. 1915 C, 1189); *O'Gorman & Young, Inc.*, v. *Hartford Fire Insurance Co.*, 282 U. S. 251 (51 Sup. Ct. 130). The regulation of wages of railroad employees has been sustained. *Wilson* v. *New*, 243 U. S. 332 (37 Sup. Ct. 298, L. R. A. 1917 E, 938, Ann. Cas. 1918 A, 1024). The business of dealing in milk has been regulated so as to protect producers who must sell their produce on credit. *People* v. *Perretta*, 253 N. Y. 305 (171 N. E. 72, 84 A. L. R. 636). Commission merchants have been required to give bonds for honest accounting to prevent evils incident to the business of dealing in farm products. *Payne* v. *Kansas*, 248 U. S. 112 (39 Sup. Ct. 32)."

The court of appeals held, 262 N. Y. 271, 272 (186 N. E. 699):

"State courts should uphold State regulation whenever possible. They should be clearly convinced that a statute is unconstitutional before they declare it invalid," citing *Ives* v. *Railway Co.*, 201 N. Y.

271 (94 N. E. 431, 34 L. R. A. [N. S.] 162, Ann. Cas. 1912 B, 156) and other cases.

"With full respect for the Constitution as an efficient frame of government in peace and war, under normal conditions or in emergencies, with cheerful submission to the rule of the Supreme Court that legislative authority to abridge property rights and freedom of contract can be justified only by exceptional circumstances and, even then, by reasonable regulation only, and that legislative conclusions based on findings of fact are subject to judicial review. * * *

"With the wisdom of the legislation we have naught to do. * * *

"The policy of noninterference with individual freedom must at times give way to the policy of compulsion for the general welfare."

Chief Justice Pound wrote the opinion of the court. Justices Crane, Lehman, Hubbs and Crouch concurred. Kellogg did not sit and O'Brien dissented.

Many have gone through every panic beginning 1873 up to date and in their opinion the present emergency and depression is more serious than all the preceding ones since 1873, combined.

Never such want of employment, never such failures of banks, never such greed and selfishness on the part of the few, never such bureaucratic domination and waste, never such a multitude of unnecessary officials.

Our legislature, knowing the actual conditions of the present emergency deemed the law a proper one under the police power of the State and it should be sustained.

The decision of the circuit court should be affirmed and the case remanded for further proceedings in accordance with this opinion. No costs, the appellee filed no brief,