In re Gary F. THOMPSON, Debtor.

Gary F. THOMPSON, Plaintiff,

v.

GREAT LAKES FEDERAL SAVINGS AND LOAN ASSOCIATION, Defendant.

In re James R. ENSLEY and Barbara J. Ensley, Debtors.

MUTUAL HOME FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff,

v.

James R. ENSLEY and Barbara J. Ensley, Raymond Johnson, Trustee, Defendants.

In re Vernon WADE, Debtor.

Vernon WADE, Plaintiff,

v.

WATERFIELD MORTGAGE COMPANY, Defendant.

COLONIAL MORTGAGE COMPANY OF INDIANA, Plaintiff,

v.

Vernon WADE, Defendant.

Nos. HK 81 02117, NG 81 03222 and NK 81 01340.

Adv. No. 81 1317, 81 0632 and 81 620.

United States Bankruptcy Court, W. D. Michigan.

Feb. 18, 1982.

---

Edward R. Barton, Allegan, Mich., for Gary F. Thompson.

David K. Ryan, Battle Creek, Mich., for Great Lakes Federal Sav. and Loan Ass'n.

Warner, Norcross & Judd, Patrick E. Mears, Grand Rapids, Mich., for Mut. Home Federal Sav. and Loan Ass'n.

Sprik & Anderson, David C. Anderson, Grand Rapids, Mich., for James R. Ensley and Barbara J. Ensley, Raymond Johnson.

Philip A. Brown, St. Joseph, Mich., for Vernon Wade.

Russell & Batchelor, James W. Batchelor, Grand Rapids, Mich., for Waterfield Mortg. Co. and Colonial Mortg. of Indiana.

Before DAVID E. NIMS, Jr. and LAURENCE E. HOWARD, Bankruptcy Judges.

## OPINION

### CHAPTER 13—CURING MORTGAGE DEFAULTS

These cases are before the court on the same question involving the construction of 11 U.S.C. § 1322(b)(5) which provides for the treatment of real estate mortgages in a Chapter 13 plan. In each case the debtor gave a mortgage on real estate which was the subject of a foreclosure sale prior to the filing of the debtor's petition. These debtors seek to protect their interests in the real estate by paying off any arrearage through their Chapter 13 plan and resuming the regular mortgage payments. In each case the mortgagee has objected to this treatment as contrary to the treatment of secured creditors provided for in 11 U.S.C. § 1322.

The facts of the cases are as follows:

GARY THOMPSON: This case is before the court on an objection to the debtor's Chapter 13 plan and a motion for rehearing on an order disallowing and/or reducing a claim. Great Lakes Federal Savings and Loan Association (Great Lakes) foreclosed on debtor's real estate mortgage and conducted a sale of the property on May 7, 1981. Great Lakes was the purchaser in an amount equal to the balance due it, $25,280.33. Two weeks later the debtor filed proceedings in Chapter 13. Great Lakes filed a proof of claim in the amount of $25,280.33, plus interest. Debtor objected to this claim and an order was entered on August 21, 1981, allowing the claim as a priority claim only insofar as it would pay off the arrearage due on the mortgage. Debtor proposes to pay the mortgage arrearage to the date of filing through the plan, and make current payments outside the plan. Great Lakes has objected to the confirmation of the plan, and asked for reconsideration of this court's order reducing its claim.

VERNON WADE: Debtor filed a petition in Chapter 13 on March 30, 1981. Prior to this time, on October 21, 1980, a foreclosure sale was conducted by Colonial Mortgage Company of Indiana, Inc. (Colonial) at which Colonial purchased the real estate in question at a price of $10,516.54. On June 19, 1981, the debtor's Chapter 13 plan was confirmed over the objection of Colonial. The plan provided for the payment of the arrearage due Colonial as well as the maintenance of regular mortgage payments. Debtor then brought this adversary proceeding to set aside the sheriff's deed of October 21, 1980, and Colonial brought an action for the determination of the debtor's interest in the property. Colonial argues that the running of the statutory redemption period on April 21, 1981 divested the debtor of any interest in the property, and that the title to such property has vested in Colonial pursuant to the sheriff's deed.

JAMES AND BARBARA ENSLEY: Debtors Chapter 13 petition was filed on August 17, 1981. Mutual Home Federal Savings and Loan had foreclosed on their mortgage on debtors' residence some four months earlier on April 23, 1981. Mutual had purchased the home at the sale for $37,996.22. The debtor proposed to pay the arrearage through the plan, and make regular mortgage payments outside the plan. The plan was confirmed over Mutual Home's objection on October 5, 1981. It was indicated by the court, however, that in confirming the plan it was not ruling as to the relative interests of the Ensleys and Mutual Home in the real estate in question. In the present action Mutual Home seeks a lift of the automatic stay on the ground that the debtors' interest in the property terminated on October 23, 1981, when the redemption period expired.

11 U.S.C. § 1322(b) provides in part for the treatment of secured claims in a Chapter 13 plan:

"(b) Subject to subsections (a) and (c) of this section, the plan may—

\*　　\*　　\*　　\*　　\*　　\*

(2) modify the rights of holders of secured claims other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims;

(3) provide for the curing or waiving of any default;

(4) provide for payments on any unsecured claim to be made concurrently with payments on any secured claim or any unsecured claim;

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due; ..."

The disputes in the present actions arise from the debtors' attempts to apply subsection (b)(5) to claims secured by real estate where a foreclosure sale was held prior to the order for relief. The court is essentially being asked to determine the limits of the debtors' power to cure a default. The mortgagees argue that the section does not provide for any deviation from state law

which limits the debtors' interest to the right of redemption within a statutorily prescribed period. While the mortgagees are correct in asserting that Michigan law limits a mortgagor's ability to cure a default where a debt has been accelerated[1] or a sale held,[2] case law under 11 U.S.C. § 1322(b) indicates that the courts are in disagreement on the question of whether the Bankruptcy Code deviates from state law in allowing a post-default cure. Some courts have held that where a mortgage by its terms permitted the creditor to accelerate the debt, (b)(5) does not apply.[3] Other courts have similarly denied the use of (b)(5) where a state court judgment of foreclosure had been obtained before filing[4] or where a foreclosure sale had been held.[5]

■ On the other hand, a number of courts have read (b)(5) as unaffected by certain state laws limiting cure.[6] This court would join with the latter cases and read 11 U.S.C. § 1322(b)(5) as allowing the cure of arrearages and the reinstating of the original mortgage terms where the debtor files a petition prior to such time as state law cuts off the debtor's interest in the mortgaged property, namely the running of the statutory redemption period under Michigan law.

In attempting to construe 11 U.S.C. § 1322(b) the court has examined the treatment of secured debts under the Bankruptcy Act of 1898.

Under § 652 of the Act, secured creditors could not be required to participate in a Chapter XIII plan without their consent:

"Sec. 652. If a plan has not been so accepted, an application for the confirmation of the plan may be filed with the court within such time as the court shall have fixed in the notice of such meeting, or at or after such meeting and after, but not before—

(1) *it has been accepted in writing*, if unsecured creditors are affected by the plan, by a majority in number of all such creditors whose claims have been proved and allowed before the conclusion of the meeting which number shall represent a majority in amount of such claims, and *by the secured creditors whose claims are dealt with by the plan* ; . . ." (Emphasis supplied)

The Act further provided in § 606 that real estate mortgages were not claims:

"Sec. 606. For the purposes of this chapter, unless inconsistent with the context—

(1) 'claims' shall include all claims of whatever character against the debtor or his property, whether or not provable as debts under section 63 of this Act and whether secured or unsecured, liquidated or unliquidated, fixed or contingent, *but shall not include claims*

---

1. Michigan courts have held that where a debt has been accelerated according to the terms of the instrument, a subsequent tender of the arrearage will not serve to cure the default and reinstate the terms of the original instrument. *Jaarda v. Van Ommen*, 265 Mich. 673, 252 N.W. 485 (1934); *Cooper v. Jefferson Investment Co.*, 70 Mich.App. 597, 246 N.W.2d 311 (1976), rev'd on other grounds 402 Mich. 294, 262 N.W.2d 650 (1978); *Dumas v. Helm*, 15 Mich.App. 148, 166 N.W.2d 306 (1968).

2. *Bankers Trust Company of Detroit v. Rose*, 322 Mich. 256, 33 N.W.2d 783 (1948); *Gerasimos v. Continental Bank*, 237 Mich. 513, 212 N.W. 71 (1927); *Dunitz v. Woodford Apartments Co.*, 236 Mich. 45, 209 N.W. 809 (1926); *McCreery v. Roff*, 189 Mich. 538, 155 N.W. 517 (1913).

3. *In re Williams*, 11 B.R. 504, 4 C.B.C.2d 1028, 7 B.C.D. 946 (Bkrtcy.S.D.Tex.1981); *In re La-*

*Paglia*, 8 B.R. 937, 3 C.B.C.2d 717, 7 B.C.D. 333 (Bkrtcy.E.D.N.Y.1981).

4. *In re Maiorino*, 15 B.R. 254, 5 C.B.C.2d 582 (Bkrtcy.D.Conn.1981); *In re Jenkins*, 14 B.R. 748, 5 C.B.C.2d 419, 8 B.C.D. 292 (Bkrtcy.N.D. Ill.1981); *In re Land*, 14 B.R. 132, 8 B.C.D. 90 (Bkrtcy.N.D. Ohio 1981); *In re Pearson*, 10 B.R. 189, 4 C.B.C.2d 57, 7 B.C.D. 567 (Bkrtcy.E.D.N. Y.1981); *In re Canady*, 9 B.R. 428, 4 C.B.C.2d 113, 7 B.C.D. 749 (Bkrtcy.D.Conn.1981).

5. *In re Robertson*, 4 B.R. 213, 2 C.B.C.2d 136, 6 B.C.D. 375 (Bkrtcy.D.Colo.1980).

6. *In re Davis*, 16 B.R. 473, 5 C.B.C.2d 610 (Bkrtcy.D.Kan., 1981); *In re Rippe*, 14 B.R. 367 (Bkrtcy.S.D.Fla., 1981); *In re Taddeo*, 9 B.R. 299, 4 C.B.C.2d 185, 7 B.C.D. 422 (Bkrtcy. E.D.N.Y.1981); *In re Breuer*, 4 B.R. 499, 1 C.B. C.2d 722.2 (Bkrtcy.S.D.N.Y.1980).

*secured by estates in real property* or chattels real..." (Emphasis supplied)

Nevertheless, courts held that secured creditors could be delayed in the enforcement of their liens where the effectuation of the Chapter XIII plan so required. In *Hallenbeck v. Penn Mutual Life Insurance Company*, 323 F.2d 566 (4th Cir. 1963) it was held that a bankruptcy court could properly exercise its equity powers to enjoin the foreclosure of a mortgage on the debtor's residence.[7] The debt in *Hallenbeck* had been accelerated pursuant to the terms of the contract. The court reasoned, however, that the prohibition of "dealing with" a secured creditor in a Chapter XIII plan did not assure the mortgagee all of the rights it had under the contract, but rather held that a more limited protection was provided:

> "(1) The injunction or stay must be necessary to preserve the debtor's estate or to carry out the Chapter XIII plan; (2) the granting of the injunction must not directly or indirectly impair the security of the lien; and (3) the owner of the secured indebtedness must not be required to accept less than the full periodic payments specified in his contract." 323 F.2d at 572.

The court held that this test was met by a plan which would pay any arrearage by the end of the plan and continue regular payments. some later decisions now embodied in 11 U.S.C. § 1322(b)(2) allowed for modification of the contract terms in the case of a short term secured debt to be paid in full within the terms of the plan.[8] The essence of these holdings, as in *Hallenbeck*, was that a secured creditor was not entitled to all rights afforded him under contract terms or state law, but rather need only

have his secured position protected while the reorganization proceeded.

■ The legislative history of 11 U.S.C. § 1322 nowhere indicates that this approach has been altered, and we would therefore find that the protection given the secured creditor under the Bankruptcy Code is confined to that specified in the Code and identified in *Hallenbeck*. A debt secured by real estate where the last payment is due after the last plan payment must be brought current within a reasonable time.[9] Furthermore, a mortgagee is to receive regular payments at the contract rate,[10] and the assurance of continued security.[11] In the present actions, none of the creditors has alleged that its security would be impaired by the debtors' plans, and the plans all propose to bring the mortgages current and to continue regular payments, so the court would hold that these debtors have properly invoked 11 U.S.C. § 1322(b)(5) to protect their interests in their residences.

■ The mortgagees in these actions have pointed out that the notes in question provide for the acceleration of the debt on default, and that this has been done. They argue therefore that these debts are presently due and owing, and are no longer "claims on which the last payment is due after the date on which the final payment under the plan is due". This court would not agree that this phrase excludes from 11 U.S.C. § 1322(b)(5) debts where there has been an acceleration.

As indicated above, we believe that the debtor's power to cure is not limited by contract terms of this sort which undermine Chapter 13's fundamental rehabilitative goal. Furthermore, such a reading as is

---

7. The position of the 4th Circuit in *Hallenbeck* has been adopted by the 6th Circuit. *In re Freed & Co.*, 534 F.2d 1235, 1239 (6th Cir. 1976); *Chatman v. Daugherty*, 527 F.2d 691 (6th Cir. 1975).

8. *In re Wall*, 403 F.Supp. 357 (E.D.Ark.1975); *In re Garcia*, 396 F.Supp. 518 (C.D.Cal.1974); *In re Teegarden*, 330 F.Supp. 1113 (E.D.Kan. 1971); *In re Pizzaloto*, 268 F.Supp. 353 (W.D. Ark.1967); *In re Wilder*, 225 F.Supp. 67 (M.D. Ga.1963). Contra., *In re Terry*, 294 F.Supp. 253 (S.D.Ga.1968), affd. *Terry v. Colonial Stores*

*Credit Union of Atlanta*, 411 F.2d 553 (5th Cir. 1969); *In re Rutledge*, 277 F.Supp. 933 (E.D. Ark.1967); *In re Pappas*, 216 F.Supp. 819 (S.D. Ohio 1962); *In re O'Dell*, 198 F.Supp. 389 (D.Kan.1961).

9. 11 U.S.C. § 1322(b)(5).

10. 11 U.S.C. § 1322(b)(2).

11. 11 U.S.C. §§ 362(d)(1), 1322(b)(2).

proposed by the mortgagees would virtually eliminate subsection (b)(5) from the Code. In nearly every instance in which a homeowner debtor files a petition in Chapter 13, the mortgage debt has been accelerated. To suggest that such a debtor's remedy is limited to payment of the full amount of the mortgage debt is to render the remedy in § 1322(b)(5) unavailable to all but a select number of debtors. Furthermore, such a reading would encourage mortgagees to accelerate a debt as soon as possible after any default occurs in order to improve their position should the mortgagor file Chapter 13 proceedings.

We should note that the court is aware of the existence of the express provision in 11 U.S.C. § 1124(2) voiding the effect of an acceleration clause in Chapter 11. While much of the current disagreement over the treatment of acceleration clauses in Chapter 13 would not exist if similar provision were included, we would disagree that the omission of such a provision indicates a contrary intent on the part of Congress. 11 U.S.C. § 1124 defines impairment for the purposes of acceptance of a Chapter 11 plan. There is no comparable concept of impairment in Chapter 13, because a creditor vote is not required. Therefore, no express provision paralleling § 1124 is required.

The mortgagees further argue that in these cases there is an additional element present, namely the foreclosure sale. It is reasoned that once a sale is held, the debtor's interest in the property is reduced as a matter of state law to a mere equity of redemption and the mortgage is extinguished. Therefore, it is argued that the Chapter 13 plan may only provide for the payment of the redemption amount, and may not reinstitute the original mortgage terms. The court fails to see the importance of this distinction between the acceleration of a debt and the foreclosure sale, and would hold once again that 11 U.S.C. § 1322(b)(5) is not limited by state law in this regard. Each of these actions by the creditor is but a step in a process set up by contract and state law to divest the debtor, upon default, of his interest in real property subject to a creditor's lien. The process does not fully divest the debtor of his interest until the redemption period has expired.

 If the equity of redemption expires pursuant to state law prior to the filing of a Chapter 13, this court would hold that it loses all jurisdiction to provide relief to a debtor as to that property. *In re Sparkman*, 9 B.R. 359, 3 C.B.C.2d 856 (Bkrtcy.E.D.Pa.1981); *In re Butchman*, 4 B.R. 379, 2 C.B.C.2d 174, 6 B.C.D. 403 (Bkrtcy.S.D.N.Y. 1980).

An Order will enter in accordance with this Opinion.